MATTHIAS PEAK v. JOSEPH T. ELLICOTT, *as Assignee of the Riley County Bank of Manhattan.*

AGENCY; *Trust Fund, Reclaimed from Assignee.* The plaintiff executed a note to the bank for the loan of $782.50, and afterward, at the request of the cashier of the bank that he should pay the same, and upon his promise to send and get the note then owned and held by another party, he delivered to the cashier, before the note was due, the amount thereof, and the cashier executed to him the following receipt: "The Riley County Bank of Manhattan, Ks., November 22, 1881, received of M. Peak seven hundred and eighty-two $\frac{50}{100}$ dollars, in payment of note for same amount, due February 12, 1882.—J. K. WINCHIP, Cash.;" and then credited the amount so received from the plaintiff to the cash account of the bank; but the bank failed to pay the note or any part thereof at its maturity, and appropriated all the money to its own use. *Held,* That by the transaction, the relation of principal and agent exists between the plaintiff and the bank as regards this specific fund; and *held, further,* that upon an assignment by the bank of all its property and effects to an assignee in trust for its creditors, the plaintiff has a right to follow and reclaim the fund from the assignee, as the money is a trust fund, and not assets of the bank, and does not pass to the assignee for distribution to the general creditors of the bank.

### *Error from Riley District Court.*

ACTION begun February 17, 1882, by *Matthias Peak* against *Joseph T. Ellicott*, as assignee of the Riley County Bank of Manhattan. The petition, omitting court and title, is as follows:

"The said Matthias Peak, plaintiff above named, complaining of the defendant herein named, sets forth and shows unto the court that the Riley County Bank of Manhattan, Kansas, was at the time hereinafter named a corporation created by and existing under the laws of the state of Kansas, and doing and transacting a general banking business in Manhattan, Kansas; that during the year 1881, J. K. Winchip, deceased, was the cashier of said bank, and was at the time more particularly named hereafter; that on the 12th day of October, 1881, the said plaintiff applied to the said bank through its cashier for a loan of seven hundred and eighty-two $\frac{50}{100}$ dollars for the period of four months from that date; that his said application was granted; that he

thereupon executed his promissory note in writing of that date, which is in the words and figures following:

"'$782.50.  MANHATTAN, KANSAS, Oct. 15, 1881.

Four months after date, for value received, I promise to pay to the order of the Riley County Bank of Manhattan, Kansas, seven hundred eighty-two $\frac{50}{100}$ dollars, at the Riley County Bank, at Manhattan, with 12 per cent. per annum from maturity until paid.  M. PEAK.'

And delivered the said note to J. K. Winchip, cashier of said bank, and received from him the money therefor, less a discount for the period above named; that afterward, to wit: On the 22d day of November, 1881, said plaintiff had on deposit in said Riley County Bank to his credit a large sum of money, to wit, between three and four thousand dollars, and was desirous of drawing the same from said bank, and made application to its cashier for the same; that the said J. K. Winchip, cashier as aforesaid, then asked the plaintiff to pay his said note of $782.50 as above set forth, and thereupon, although the said note was not due, agreed to and with the said cashier of said bank to pay the same; that the said J. K. Winchip, cashier as aforesaid, told the plaintiff that the note was not there, but that he would send and get the same, and thereupon the plaintiff gave him, the said J. K. Winchip, cashier as aforesaid, seven hundred and eighty-two $\frac{50}{100}$ dollars for the purpose of paying and to be applied on said note, and made and gave to plaintiff a receipt against said note, which receipt is in words and figures as follows:

"'The Riley County Bank of Manhattan, Kansas, Nov. 22, 1881, received of M. Peak seven hundred and eighty-two $\frac{50}{100}$ dollars, in payment of note for same amount, due February 12, 1882.

J. K. WINCHIP, Cash.'

"And plaintiff, further complaining, says: That at the time said receipt was executed and the money so received by said bank, the Riley County Bank was not the owner or holder thereof, but prior thereto had sold for a valuable consideration and had indorsed and delivered said note to the Harrison National Bank of Cadiz, Ohio, which, at the time of the transaction set forth, was the owner and holder thereof, and that the said sum of money so paid by him was never transmitted to the Harrison National Bank of Cadiz, Ohio, nor was said note returned to him by said bank; that the said J. K. Winchip, cashier as aforesaid, by his statements induced said plaintiff to believe that said bank of which he was cashier was still the owner and could control the aforesaid note.

"Further complaining, plaintiff says: That on the 15th day of February, 1882, when said note matured, the Harrison National Bank of Cadiz, Ohio, presented said note for payment, and said plaintiff was compelled and did pay to the said Harrison national bank the sum of seven hundred eighty-two $\frac{50}{100}$ dollars for the said note; that the sum of money, to wit, seven hundred eighty-two $\frac{50}{100}$ dollars, so paid the said J. K. Winchip, cashier, was credited to the cash account of the said bank, and held and appropriated to its own use; that on the 26th day of December, 1881, the Riley County Bank of Manhattan, Kansas, made an assignment of all its property and effects to J. W. Blair in trust for its creditors, and that afterward the said Joseph T. Ellicott was appointed assignee of the bank, gave bond as required by law, and entered upon the discharge of his duties as such assignee; that as such assignee he has now in his possession property and effects belonging to said bank.

"Wherefore, plaintiff asks that the said sum of seven hundred eighty-two and $\frac{50}{100}$ dollars be declared a trust fund, and that said assignee be ordered to pay to said plaintiff the full sum of seven hundred eighty-two and $\frac{50}{100}$ dollars, with interest thereon, out of the first money received by him as such assignee, and for such other and further relief as he in equity is entitled to."

Thereafter the defendant demurred to the petition, upon the ground that it does not state facts sufficient to constitute a cause of action in favor of the plaintiff against the defendant. At the December Term of the court for 1882, the case came on for hearing; the demurrer was sustained, and judgment entered that the defendant recover his costs. The plaintiff excepted, and brings the case here.

*Green & Hessin,* for plaintiff in error:

The receipt given by the bank as set forth in Peak's petition, and his instruction to the cashier, show, first, the establishment of the trust; and, second, the setting apart of the fund by the cashier for the purpose of paying the note.

In Ingraham's case against the assignee, his petition shows the purpose for which the money was given; and the indorsement by the cashier on the copy preserved by the bank was

a setting apart by the bank of the funds for that purpose. We think there can be no doubt that a trust was established in each case. (*City of St. Louis v. Johnson*, 5 Dill. 241; *Levi v. Nat. Bank of Mo.*, 5 id. 104; *Trinidad Nat. Bank v. Denver Nat. Bank*, 4 id. 290; *People v. M. & M. Bank*, 78 N. Y. 269; *Van Allen v. Am. Nat. Bank*, $2 id. 1; *Blaine v. Bourne*, [11 R. I. 119,] 23 Am. Rep. 429; *Nat. Bank v. Ins. Co.*, 104 U. S. 54; *Bayne, et al., Trustees, v. United States*, 93 id. 642; *Taylor v. Plumer*, [3 Maule & Selwyn, 562,] referred to in *Cook v. Tullis*, 18 Wall. 341.)

The assignee stands in relation to the plaintiff in the same situation as the bank would have done had it remained solvent. The fact that the bank had made an assignment invests the assignee with only the rights the bank then had. This case should be heard and decided upon the allegations contained in the petition, and as if the bank itself were the defendant. Now the bank, having mixed this money with its own, the whole will be treated as a trust fund, except so far as the assignee can in this case distinguish it as belonging to the bank. (*Nat. Bank v. Ins. Co.*, 104 U. S. 54; *Pennell v. Deffell*, 4 DeG., M. & G. 372, 378; *Frith v. Cartland*, 2 Hem. & M. 417, 420; *Knatchbull v. Hallett, In re Hallett's Estate*, 13 Ch. D. 696; *In re LeBlanc*, 14 Hun, 8.)

"Equity will follow money, even if put into a bag or an undistinguishable mass, by taking out the same quantity;" and the doctrine that money has no ear-mark, must be taken as subject to the application of this rule. (*Knatchbull v. Hallett*, supra, referred to in 104 U. S. 68.)

*Spilman & Brown*, for defendant in error:

1. The transactions as set forth do not contain the necessary ingredients to charge the bank with a trust for the benefit of plaintiffs, which they can enforce in a court of equity. (Story's Eq. Jurisp., §§ 964, 973, 979a; Pars. Mer. Law, p. 302, and note 3.)

2. These transactions were with Winchip alone, and were outside of the legitimate business of banking. If any trust

was created, it was with him and not with the bank, as it could not act as trustee for makers of notes which it held or expected to hold for collection. (Morse on Banks and Banking, 385, 386.)

3. If the bank is in any way chargeable for the acts of its cashier, it is as a debtor to plaintiffs as depositors. The manner and circumstances attending the deposit of this money by the plaintiffs, are no more evidence of a trust than a certificate of deposit to any other customer would be. To hold a bank responsible to its customers as a trustee is so inconsistent with banking business and so likely to do injustice to others, that it has been uniformly refused, except in cases where the bank expressly agreed to stand in that relation, or was clearly so chargeable.

The case of *Nat. Bank v. Ins. Co.*, 104 U. S. 54, and authorities therein cited — mainly relied on by counsel for plaintiffs in error — is one where an agent in Baltimore, acting for an insurance company in Hartford, Conn., deposited money in a bank which well knew at the time that the agent held the money in a fiduciary capacity; that it belonged to the company which he represented, and was therefore a trust fund; yet afterward the bank, upon its own motion, applied the deposit to the payment of a note it held against the agent. The insurance company brought suit against the bank to recover the money, upon the ground that the bank held it in trust for the company. The court sustained the action, upon the ground that the bank received the money and held it impressed with a known trust for the use of the plaintiff. Of the same import are *People v. M. & M. Bank*, 78 N. Y. 269, and *Blaine v. Bourne*, 11 R. I. 119.

If there was a trust created, there must have been a *cestui que trust*, and in these two cases it must have been the holders of the notes against plaintiffs; but it is not alleged or claimed that they or either of them presented the notes to the bank for payment. They could not therefore demand the execution of a trust as against the bank. Admitting, then, the transactions with Winchip as charged, and the *cestuis que trust*

failing to avail themselves of the trust, these transactions then resolve themselves into the relation of debtor and creditor as between the plaintiffs and the defendant bank.

The opinion of the court was delivered by

HORTON, C. J.: The question in this case is, whether a trust in favor of the plaintiff is impressed upon the $782.50 delivered to the cashier of the Riley County Bank on November 22, 1881, for the purpose of paying the note of plaintiff executed to the bank, but at that time. owned and held by the Harrison National Bank of Cadiz, in Ohio. When the bank through its cashier accepted the $782.50, it was not paid by the plaintiff as a deposit, nor accepted by the latter as a deposit, nor was the relation of debtor and creditor between the bank and the plaintiff created by the transaction. On the other hand, as respects this specific sum, the relation between the plaintiff and the bank must be regarded as that of principal and agent. After the bank received this sum to satisfy the note of the plaintiff, the bank held the money in a fiduciary capacity: if the money was not applied according to the understanding of the parties to the satisfaction of the note, it should have been returned to the plaintiff. It was not deposited to be checked out or to be loaned, or otherwise used by the bank: in law the bank held it as a trust fund, and not as the assets of the bank. The defendant, as assignee of the bank, succeeds to all the rights of the bank, but as such assignee he has no lawful authority to retain a trust fund in his hands belonging to the plaintiff, and which the bank at the time of receiving the same promised and agreed to apply in payment of plaintiff's note. As the money was a trust fund, and never belonged to the bank, its creditors will not be injured if it is turned over by the assignee to its owner. Even if the trust fund has been mixed with other funds of the bank, this cannot prevent the plaintiff from following and reclaiming the fund; because if a trust fund is mixed with other funds, the person equitably entitled thereto may follow

11 — 30 KAS.

it, and has a charge on the whole fund for the amount due. (*Frith v. Cartland*, 2 Hem. & M. 417, 420.)

Counsel suggest "if there was a trust created, there must have been a *cestui que trust,* and that if anyone is entitled to follow and reclaim the money, it must be the owner and holder of the note of plaintiff." It does not make any difference that instead of trustee and *cestui que trust,* the case is one of fiduciary relationship. If a wrong arises out of such relationship, the same remedy exists against the wrong-doer on behalf of the principal, as exists against a trustee on behalf of the *cestui que trust.* Wherever a fiduciary relationship exists, and money coming from the trust lies in the hands of the person standing in that relationship, it can be followed by the principal and separated from any money of the wrong-doer. (*In re West of England & South Wales District Bank, Ex parte Dale & Co.,* 11 Ch. D. 772; *Knatchbull v. Hallett,* 13 Ch. D. 696.)

Counsel further suggest that the transaction between the plaintiff and the cashier of the bank was outside of the legitimate business of the bank, and if any trust was created it was with the cashier and not with the bank. Not so. The cashier was an officer of the bank, and the petition charges that the fund delivered to him was credited to the cash account of the bank and held and appropriated by the bank to its own use. The knowledge of the cashier under these circumstances is imputable to the bank, and the bank must be held as having notice that the money was received as a trust fund. The relation between the plaintiff and the bank as respects the money delivered to the cashier being that of principal and agent, the plaintiff has the right to follow and reclaim it from the assignee. As the bank in law held the money as a trust fund, as the agent of the plaintiff, its assignee holds it in like capacity. If the facts alleged in the petition are proved upon the trial, the plaintiff will be entitled to a decree for the amount of the fund claimed, with interest. (*City of St. Louis v. Johnson,* 5 Dill. 241; *National Bank v. Insurance Co.,* 104 U. S. 54, and cases cited therein.)

The judgment of the district court must be reversed, and the cause remanded, with direction to the court below to overrule the demurrer filed to the petition.

All the Justices concurring.

JESSE INGRAHAM V. JOSEPH T. ELLICOTT, *as Assignee, &c.*

The opinion of the court was delivered by

HORTON, C. J.: The questions in this case are identical with those in *Peak v. Ellicott,* just decided, and upon the authority of that case the judgment of the district court will be reversed, and the case remanded, with direction to the court below to overrule the demurrer filed by the defendant to the petition.

All the Justices concurring.