## WALTON SHIELDS, DISTRICT ATTORNEY, *v.* G. D. THOMAS, RECEIVER.

1. TRUST. *Tracing fund. Charge on mass. Equitable relief.*

   Equity will follow a trust-fund through all changes, whether its identity is preserved or it is merged in a mass of which it forms a part; but one seeking to recover a specific fund, or to fix a charge upon a mass, must trace his estate, and show that the specific fund or thing is in equity his, or that his estate has gone into and remains in the mass he seeks to recover.

2. SAME. *Bank. Deposit of taxes by sheriff. Charging assets.*

   Where a sheriff, without authority, though with knowledge on the part of the bank officials as to the character of the fund, deposits in a bank taxes collected by him, and afterwards the bank fails and goes into the hands of a receiver, the state cannot, to the exclusion of general creditors of the bank, impress a charge on its assets for the amount of the fund, it not appearing that any part thereof, either in its original form as money or as part of the mass of the bank assets, has come into the hands of the receiver.

FROM the chancery court of Washington county.

HON. W. R. TRIGG, Chancellor.

The case is stated in the opinion.

*Thomas & Griffin,* for appellant.

The fact that the money was deposited to the credit of Griffin " as sheriff," was notice that it was held in a fiduciary capacity, and that the deposit was unlawful. *Shaw* v. *Spencer,* 100 Mass., 382; *Fisher* v. *Brown,* 20 Am. St. R., 467; 52 N. Y., 1; 100 *Ib.,* 31; *Shelton* v. *Laird,* 68 Miss., 175.

Here the bank had actual notice. See *Armour* v. *Bank,* 69 Miss., 700.

The receiver is not a purchaser for value, and does not hold innocently. He holds only such title as was in the bank, subject to all the equities that could be asserted against it.

It is immaterial that there are no " ear-marks " to identify the money. It can make no difference whether one particular dollar is substituted for another, so long as its intrinsic value is the same. *Harrison* v. *Smith*, 57 Am. R., 571, s.c. 83 Mo., 210; *Bank* v. *Insurance Co.*, 104 U. S., 54; *Carley* v. *Graves*, 24 Am. St. R., 99, s.c. 85 Mich., 483.

The money cannot be specifically traced, but enough appears to warrant the inference that the bank has mingled the trust-fund with its own means, and rendered identification impossible. In this way it has increased its own assets. *Bank* v. *Hummel*, 20 Am. St. R., 257, s.c. 14 Col., 259; *Plow Co.* v. *Lamp*, 20 Am. St. R., 442, s.c. 80 Iowa, 722.

The facts in this case are almost identical with those in *Sandiego Co.* v. *Bank*, 52 Fed. R., 59, where the court held that the receiver had no title to the money, and fixed a lien upon the entire assets of the bank in his hands for the amount unlawfully appropriated.

The receiver cannot be heard to say that, although the bank committed an unauthorized and illegal act, and although there are sufficient assets to discharge the obligation, yet the particular money cannot be identified, and the owner must suffer for a breach of the trust.

The general creditors of the bank cannot complain, since they had no interest in this fund, and the bank has gotten the benefit of the money by unlawful appropriation.

The acts of the bank should be declared unlawful under the general statute of the state, and as violative of public policy. As it used this money without authority, a lien should be fixed upon the entire assets in the hands of the receiver.

The facts in this case are entirely different from those in *Billingsley* v. *Pollock*, 69 Miss., 759.

*J. H. Wynn*, on the same side.

The money deposited belonged to the public. The bank officials knew this, and could only receive it for safe-keeping.

They had no more right to use it than the tax-collector. Code 1880, §§ 548, 2787, 2789; 67 Miss., 405. It did not lose a trust character by going into the vaults of the bank. 104 U. S., 54; 44 Miss., 99; 69 *Ib.*, 700.

While the authorities differ as to the right to follow funds after identity is lost, the weight of authority is for following the sum into the general assets. Perry on Trusts, §§ 447, 837; 66 Wis., 401; 52 N. Y., 1; 96 *Ib.*, 32; 57 Pa., 202; 30 Kans., 156; 104 U. S., 54; *Peters* v. *Bain*, 130 *Ib.*, 670; 36 Fed. R., 239; *Sandiego Co.* v. *Bank*, 52 *Ib.*, 59. This last case is directly in point. While we have no statute, as in California, prohibiting tax-collectors from depositing taxes in bank, yet it is unlawful for them to use or loan the same, and it is unlawful for a bank to receive it except for safe-keeping.

The court will note that the petition alleges that the money was in the hands of the receiver, or had gone into the assets of the bank, and that the receiver then had on hand $15,000 in money assets of the bank, and this is not denied.

The owners of the money did not voluntarily become creditors of the bank, and the money should be repaid in preference to simple creditors or voluntary depositors.

The receiver is not a purchaser for value. Other creditors cannot complain that priority is given in the payment of this fund. They can only ask distribution of what belonged to their debtor.

*Billingsley* v. *Pollock*, 69 Miss., 759, is not an authority against our claim, for the court in that case emphasizes the fact that Mrs. Billingsley voluntarily dealt with the bank, and knew that the transaction was a legitimate one, and that the money collected on her note would go into the general cash assets of the bank, to be remitted by exchange.

*Yerger & Percy*, for appellee.

It would seem that the mere statement of this case dis-

poses of it.   The deposit by the sheriff created no trust.   But if it did, none could be asserted under the facts shown, because the trust-fund cannot be traced into the hands of the receiver.

" We should not be beguiled by the use of words, and call one claim a trust in order to secure it a preference over debts."   *Billingsley* v. *Pollock*, 69 Miss., 759.

In *Armour* v. *Bank*, 69 Miss., 700, if the bank had become insolvent after the deposit of the money, the plaintiff could not have had any lien upon the assets of the bank.   Here the deposit of the money by the sheriff could give the state no superior claim over what it would have had if the deposit had been made by the state itself.

Appellant relies upon the case of *Sandiego Co.* v. *Bank*, 52 Fed. R., 59, which is very similar to this case.   There the court held that the county had a lien upon the assets of the bank, but the fatal difference between that case and this is that the opinion of the court is based upon a statute of the state of California, which made it illegal for the officer to make, or the bank to receive, the deposit.   There is no such statute in this state.   The sheriff had the right to deposit the funds until such time as it should be turned over to the state treasurer, and the bank had a right to receive it, thus becoming the debtor of the sheriff.

Even if the trust existed in favor of the state against the bank, it could not be asserted against the funds in the hands of the receiver, because of the allegations, which were admitted to be true by setting the case down for hearing upon the sufficiency of the plea.   These allegations are that it is impossible to trace into the hands of the receiver any of the money.

The Sandiego case is erroneous, although the statute of the state prohibited the deposit.   Its doctrine finds no support in authority, precedent or reason.   The fact that the state became the involuntary creditor of the bank could not affect the equitable principles which govern the fastening of a trust

upon a given fund.   If one steals money and dies leaving an estate, there is no known principle upon which the same can be charged with a lien or trust in favor of the person from whom the money is stolen, unless the stolen money can be traced into the assets which remain.

The fallacy of attempting to fasten a lien upon the entire estate in cases like this is demonstrated by the well-considered opinion in *Bank* v. *Dowd*, 38 Fed. R., 172.   See also Pomeroy's Eq. Jur., §§ 1051, 1058 ; 2 Story's Eq. Jur., §§ 1258, 1259 ; 39 Fed. R., 231 ; 42 *Ib.*, 192 ; 48 *Ib.*, 25.   If the fund cannot be recognized as a distinct one, but is so mingled with other money or property as to be incapable of identification, it can no longer be followed.   The utmost relaxation of this rule is illustrated in *Frelinghuysen* v. *Nugent*, 36 Fed. R., 229.

The case of *Bank* v. *Insurance Co.*, 104 U. S., 54, does not support the position of appellant.   The decision in *Peters* v. *Bain*, 133 U. S., 670, is fatal to the Sandiego case.   As said in *Calvin* v. *Gleason*, 105 N. Y., 256, upon an accounting in bankruptcy or insolvency, a trust-creditor is not entitled to a preference merely on the ground of the nature of his claim. The general rule is that, in order to follow trust-funds, they must be identified.

COOPER, J., delivered the opinion of the court.

On December 22, A.D. 1891, the Bank of Greenville, doing business in Greenville, Washington county, closed its doors, and soon thereafter a receiver of its assets was appointed by the chancery court of Washington county.   By an act approved February 10, 1892 (Laws, p. 46), the district attorney of the fourth judicial district was directed to intervene and assert the claim of the state of Mississippi, of the county of Washington and of the board of levee commissioners of the Mississippi levee district to the sum of $14,906.06, which sum had been deposited in said bank by the sheriff and tax-collector of Washington county.   In obedience to the direc-

tion of that act, the district attorney exhibited his petition in the said chancery court, by which he charged that "during the month of December, 1891, John L. Griffin, sheriff and tax-collector of said county, had deposited $14,906.06 to his credit as sheriff, of the funds collected by him from the taxes of the year 1891, for the state, county and levee board, and at the date of the appointment of said receiver there was $14,906.06 of said fund which had not been drawn out of said bank by said Griffin." The petition charges that the officers and managers of the bank knew of the character and ownership of the funds when the same were deposited, and that neither Griffin nor any one else could legally use the same in any other manner than to make payment thereof into the proper treasuries. Continuing, the petition charges that " said moneys are now in possession of said receiver, unless said bank had used the same prior to its suspension; that if the same are in the hands of said receiver, then said state, county and levee board have the right to have the amounts respectively belonging to them set apart and paid to their respective officers authorized to receive the same; and if said bank had used the same prior to its suspension, then said funds have gone into, and become a part of, the assets of said bank, and petitioners are informed and believe that said receiver has on hand more than $15,000 in money and currency of the assets of said bank." The prayer of the petition is, that the court will direct the receiver to pay to the proper officers the sum so deposited by the sheriff and collector out of any moneys then in his hands, or that might thereafter be received by him, before paying any sums to the depositors or other creditors of the bank. To this petition the receiver pleaded that, "as said John L. Griffin, sheriff and tax-collector, deposited in the bank of Greenville, from time to time, the various sums of money, which aggregated the total sum claimed—viz., $14,906.06—the same was mingled with the other money on deposit in said bank, there having been, up to the time of the suspension of said bank,

over $100,000 deposited therein, in addition to the deposits
of said Griffin; that when the bank suspended, there came
into the hands of the receiver only the sum of $368.70 in
cash, and it is impossible to trace into the hands of the re-
ceiver any of the money deposited by the said John L. Griffin,
either as constituting a part of the said sum of $368.70 or as
constituting any part of the assets of said bank received by
the receiver." The plea was set for hearing, and sustained,
and the petition dismissed, and the petitioner appeals.

There are decisions by several courts of authority sus-
taining the right of the petitioner to subject the fund in the
hands of the receiver to the payment of the demand set up,
in exclusion or postponement of the creditors of the bank,
but, in our opinion, they are not sound in principle, and are
departures from the well-settled course of decision. That
there has been a development of the equitable rule of follow-
ing trust property or money, and a consequent expansion of
the right of the beneficiary, so that at this day relief would
be afforded under circumstances in which it would formerly
have been denied, is certainly true; but it is not true that
the courts generally have abandoned the fundamental prin-
ciple which controls in the application of the rule, and have
substituted another and totally different one. In the cases
cited by counsel for appellant, the principle has been misap-
plied or overlooked; in some of them it is apparently aban-
doned.

"Formerly the right of following trust-property depended
upon the ability of identifying it, the equity attaching only
to the property misapplied. This right was first extended to
the proceeds of the property—namely, to that which was
procured in place of it by exchange, purchase or sale. But
if it became confused with other property of the same kind,
so as not to be distinguishable, without fault on the part of
the possessor, the equity was lost. Finally, however, it has
been held as the better doctrine that confusion does not
destroy the equity entirely, but converts it into a charge on

the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried." Bradley, J., in *Frelinghuysen* v. *Nugent*, 36 Fed. Rep., 229.

Mr. Pomeroy says: "Equity regards the *cestui que trust*, although without any legal title, and perhaps without any written evidence of interest, as the real owner, and entitled to all the rights and consequences of such ownership. . . . No change in the form of the trust-property, effected by the trustee, will impede the right of the beneficial owner to reach it and to compel its transfer, provided it can be identified as a distinct fund, and is not so mingled up with other moneys or property that it cannot be specifically separated." The principle which controls is that a court of equity is but lending its aid to the real owner in reclaiming his own, and that, regardless of mere changes in the form of the property, the equitable title remains unimpaired so long as the *res* (in whatever form it exists) may be traced, and that, when identification is lost by confusion, it will give such relief as is practicable by creating a charge upon the mass for the value of the ascertainable but inseparable part of the same which belonged to the *cestui que trust*. Wherever, in the application of these rules, the right of the beneficial owner may be preserved, the jurisdiction of the court of chancery is supported by both principle and authority, and while, as we have said, there are cases to be found in which the mere reception and use of the trust-fund by the owner of an estate has been held to be sufficient to warrant the court in fixing an equitable charge on the whole estate, these decisions are, in our opinion, not the law.

In *McLeod* v. *Evans*, 66 Wis., 401; *Peak* v. *Ellicott*, 30 Kans., 156; *Plow Co.* v. *Lamp*, 80 Iowa, 722; *Boyer* v. *King*, *Id.*, 497; *Harrison* v. *Smith*, 83 Mo., 210; *Stoller* v. *Coates*, 88 Mo., 514; *Meyers* v. *Board of Education* (Kans.), 32 Pac. Rep., 658; *Smith* v. *Combs*, 49 N. J. Eq., 420; *People* v. *Bank*, 96 N. Y., 32, it seems to be held, though in some of the cases

not very clearly, that there is a sort of equitable charge upon the whole estate of a person who has converted or wasted trust-funds. This doctrine apparently rests upon a presumption entertained by the courts which announced it, that the general estate would have been less than it was but for the use of the trust-fund, and that an indirect and consequential melioration of the general estate subjects it to an equitable charge as though the trust-fund was actually confused in but a part of it.

In *Smith* v. *Combs*, 49 N. J. Eq., 420, the vice-chancellor examined the facts tending to show that the trust-fund could be traced into certain bank stock which the testator had on hand at the time of his death, and which passed into the hands of his executor. If the conclusion of the court had rested upon this fact, found to be proved, no question under any modern authority would exist as to the right of the *cestui que trust* to subject that specific stock to his demand. But the vice-chancellor, proceeding, quotes from Lewin on Trusts as follows : "If a sole trustee dies insolvent and indebted to the trust-estate, the personal representative of the trustee has a right of retainer in respect of the debt to the trust, as against other creditors, and, on the *cestui que trust* requiring him to exercise such right of retainer, he is bound to do so." If the learned chancellor had been considering the question of the right of the personal representative to retain for a debt due him, the extract from Lewin would have been appropriate, for Lewin, in support of his text, refers to *Sander* v. *Heathfield*, 19 L. R., Eq. Cas., 21, and *Crowder* v. *Stewart*, 16 Ch. Div., 368. An examination of these cases shows that the sole question involved in them was the right of retainer by the executor. In the latter case Malius, vice-chancellor, said : "I can only repeat what I said on a former occasion, and what almost every other judge has said—that the right of retainer is a relic of old law, not founded on justice, and working the greatest possible injustice." Now, in *Smith* v. *Combs*, the vice-chancellor, treating this extract from Lewin

as authority for following a trust fund, while it is not, proceeds to eulogize the principle as eminently equitable and just. The court of New Jersey is entitled to great respect because of its character and the ability of its members, and we note the misapplication of the rule of retainer in the opinion of the court, to show how easy it may be to establish a new principle by the inadvertence of distinguished judges.

The principle of following trust-funds in equity is so fully discussed in *Knatchbull* v. *Hallett*, L. R., 15 Ch. Div., 696, that it is unnecessary to cite any other English case to show the circumstances under which the jurisdiction is exercised in that country. The supreme court of the United States exhaustively considered the question in *Bank* v. *Insurance Co.*, 104 U. S., 54, which case may be considered the leading American authority. The rule announced in these cases, as we understand it, is that trust-property will be followed by a court of equity through all its transmutations and forms, and that whether its identity and individuality is preserved or is merged in a mass of which it forms a part, but that the right rests upon the equitable title of the beneficiary who, seeking to recover specific property or to fix a charge upon a mass, must trace his estate, and show that the specific thing claimed is in equity his property or that his estate has gone into and remains in the mass he seeks to charge. *Peters* v. *Bain*, 133 U. S., 670; Perry on Trusts, §§ 836, 841, 843 and notes, where many English and American authorities are cited. See also 2 Pomeroy's Eq., §§ 1048–1058.

The principle of following trust funds or property has been frequently applied, not only where the strict relation of trustee and *cestui que trust* exists, but also against other persons occupying the relation of a *quasi* trustee, and extends to many cases of mere fiduciaries; and, though the relation between the parties may not be of such character as to give the court of equity exclusive jurisdiction. In such instances, the jurisdiction of equity seems to spring from the analogy to strict trusts and from the inadequacy of legal remedies. 1 Pom.

Eq., § 158. It has been held that money paid into bank to his own credit by an agent, partner, officer or other fiduciary may be claimed and recovered in equity by the real owner *Bank* v. *Insurance Co.*, 104 U. S., 54; *Bank* v. *King*, 57 Penn. St.; *Holmes* v. *Gilman*, 138 N. Y., 369; *Knatchbull* v. *Hallett*, L. R., 15 Ch. Div., 696; *Myers* v. *Board of Education* (Kans.), 32 Pac. Rep., 658; *Independent Dist., etc.*, v. *King*, 80 Iowa, 497.

As to the general assets of the Bank of Greenville, we think the petitioner is not entitled to relief upon the facts stated in the petition, because it is not shown that the funds deposited by the tax-collector now form a part thereof in any form. The record does not disclose to what purpose the fund was applied. For any thing that appears to the contrary, it may have been lost in trade, appropriated to the payment of pre-existing debts or paid out to the agents and officers of the bank for services rendered, and what, if any, portion was so lost or applied could probably not be ascertained with any degree of certainty. The court, in attempting to determine what portion, if any, of the trust-fund has been lost and what yet remains as invested in and represented by the existing assets, would, from necessity, act upon mere conjecture. It may be that as to the small sum of $368.70, which was found in the vaults of the bank, a different conclusion might have been reached if an issue had been taken on the plea instead of setting it for hearing on its sufficiency. The plea avers that "it is impossible to trace into the hands of the receiver any of the money deposited by John L. Griffin, either as constituting a part of the said sum of $368.70 received by said receiver, or as constituting any part of the other assets of the bank received by said receiver." By setting the pleas for hearing, the petitioner admitted the truth of the facts therein stated, and upon such facts the petitioner was not entitled to relief.

In *Knatchbull* v. *Hallett*, L. R., 15 Ch. Div., 696, it was held that where a trust-fund was traced into the personal

bank account of the trustee, checks drawn by him generally would be applied, first, to the disbursement of the fund which belonged to him, leaving the trust-fund as the last item drawn against. Under this rule, it may be that a trust-fund traced to the vaults of a bank would be presumed, *prima facie*, to remain as long as there was any money left therein; but it may also be true that the facts could be made otherwise to appear, in which case the presumption would be overturned. Giving to the plea its legitimate effect, it follows that all relief was properly denied to the petitioner, because it cannot be shown that the fund deposited by the tax-collector, or any part of it, is in the hands of the receiver, either in its original or transmuted forms ·or as a part of the mass of the assets of the bank.

*Decree affirmed.*