DAVID HUBBARD, *as Administrator of the estate of George B. Lord, deceased,* v. THE ALAMO IRRIGATING & MANUFACTURING COMPANY.

1. TRUST FUNDS, *Action to Recover—Practice.* This action was brought by the plaintiff to recover trust funds wrongfully mingled by L., a deceased banker, with his own funds. H., administrator of L.'s estate, Hayes, a former administrator, and L.'s widow, were joined as defendants. *Held,* That no error was committed in overruling the motion of H. to strike out all allegations with reference to the other defendants; also, *held,* that a demurrer, on the ground that there was a defect of parties defendant, was properly overruled.

2. CREDITORS, *as Defendants.* In such an action, it is not necessary that all creditors and other persons who may be interested in the estate be brought in as defendants.

3. CASE, *Followed.* The case of *Myers v. Board of Education,* 51 Kas. 87, approved and followed.

4. ADMINISTRATION—*Following Trust Fund.* A trust fund wrongfully mingled by a trustee with his other funds and property, and retained by him, may be followed and reclaimed from the administrator of his estate; and ¶ 2864 of the General Statutes of 1889, providing for the classification of demands against the estates of deceased persons, has no application, because such trust funds constitute in equity no part of his estate.

5. ACCOUNTING BY TRUSTEE—*Compensation.* In an equitable action to recover, as a trust fund, moneys received from bonds sold by L., as plaintiff's agent, where it appears that more bonds were sold than the plaintiff authorized the sale of, and that the agent kept and used a part of the proceeds, *held,* that the allowance by the court in favor of L.'s administrator of compensation for the sale of the bonds authorized to be sold will not be reversed as erroneous.

### *Error from Johnson District Court.*

THIS action was instituted by the *Alamo Irrigating & Manufacturing Company* against *David Hubbard,* as administrator of the estate of George B. Lord, deceased, H. E. Hayes, Emma Lord, widow of George B. Lord, the Johnson County Bank, and John Webster, to recover $81,000 of bonds issued by the plaintiff, and the proceeds of $19,000 of such bonds sold by Lord in his lifetime. The case was tried by

the court, and the facts were found specially. The special findings, so far as is necessary for an understanding of the questions presented, are as follows:

"1. The plaintiff, the Alamo Irrigating & Manufacturing Company, now is, and since 1888 has been, a corporation, duly organized and incorporated under the laws of the state of Kansas, with its principal place of business at the city of Syracuse, in the county of Hamilton, in said state, the object and purpose of said corporation being the construction, maintenance and operation of an irrigation canal or ditch, and it now owns and operates such canal or ditch, 31 miles in length."

"4. In the latter part of May, or early part of June, 1889, the plaintiff, by its officers and directors, made the acquaintance of George B. Lord, the defendant's intestate, and borrowed of him the sum of $1,000, the payment of which the plaintiff secured by executing to said Lord a mortgage on its ditch or canal as then constructed.

"5. The said George B. Lord was, at that time, a banker and investment broker, owning and controlling a private bank at Olathe, Kas., known and called 'The Johnson County Bank,' and having also a branch office of said Johnson County Bank at Nashua, N. H., conducted by his financial agent, James R. Swallow, who issued and paid certificates of deposit, sold farm loans, city and county warrants, bonds, etc., in his banking and brokerage business. Said Lord continued in the banking and brokerage business, as aforesaid, from said time until the time of his death, which took place on the 6th day of October, 1891.

"6. On or about the 1st day of July, 1889, the plaintiff, desiring to raise the sum of $10,000 for the purpose of extending and enlarging its line of irrigating ditch, approached the said George B. Lord for the purpose of ascertaining whether he, Lord, could sell that amount of the plaintiff's bonds, and, receiving a favorable reply, the plaintiff issued a series of 200 bonds of the denomination of $500 each, amounting in the aggregate to the sum of $100,000; said bonds being dated July 1, 1889, and payable July 1, 1909, with interest at the rate of 7 per cent. per annum, for which semiannual coupons were attached. Said amount of bonds were issued at the instance and request and upon the representation of the said Lord that he could sell $10,000 worth of bonds out of a series of a hundred thousand easier than if the issue were only ten thousand. The payment of said

bonds was secured by the execution of a trust deed to the said Lord as trustee, and defendant H. E. Hayes as beneficiary, upon the plaintiff's irrigating ditch and franchises, a copy of which trust deed is attached to the plaintiff's petition in this case.

"7. Said H. E. Hayes had, in fact, no beneficial interest in said bonds, and was only a nominal beneficiary.

"8. On or about the 1st day of July, 1889, the plaintiff delivered to the said Lord, as its agent and trustee, the 200 bonds aforesaid, for the purpose of having $10,000 worth of them sold for the purposes aforesaid.

"9. The said George B. Lord received the said bonds as the agent, broker and trustee of the plaintiff, for the purpose of negotiating and selling $10,000 worth of the same for its use; and at various times during the years 1889, 1890 and 1891 the said George B. Lord sold 38 of said bonds at par, realizing therefor the sum of $19,000, the bonds sold being numbered 65 to 102, both inclusive. The exact date of each sale and number of bonds sold at each of the several sales does not appear from the evidence.

"10. The sale of more than $10,000 worth of said bonds was without the consent of the plaintiff, and was wholly unauthorized.

"11. Said George B. Lord never reported any sale of bonds to plaintiff, but, down to the time of his death, which occurred October 6, 1891, he denied to plaintiff that he had sold any of said bonds.

"12. Plaintiff only became aware after the death of said Lord that he had disposed of any of said bonds.

"13. Said George B. Lord sold said 38 bonds mostly through his agent, James R. Swallow, at Nashua, N. H., and the proceeds of such sales were placed to the credit of said Lord, and were used in his business.

"14. The $19,000 which said Lord realized from the sale of the said bonds were by the said George B. Lord wrongfully mingled with the funds of the Johnson County Bank, and used by the said Lord in the usual and ordinary course of his banking business. Said money was not placed to the credit of the plaintiff in said Johnson County Bank. The said Lord kept no account of his transactions with the plaintiff on the books of the Johnson County Bank.

"15. At various times during the years 1889, 1890, and 1891, the said George B. Lord paid to plaintiff the aggregate

sum of $8,800, including the $1,000 loan mentioned in special finding No. 4. The dates and amounts of each of the separate payments making up said sum are not in evidence.

"16. Said Lord always claimed and represented to the plaintiff that the payments aforesaid were advanced out of his own funds, and were not the proceeds of the sale of the plaintiff's bonds, the sale of which he at all times denied to the plaintiff.

"17. At the commencement of this suit, D. Hubbard was, and now is, the duly-appointed, qualified and acting administrator of the estate of the said George B. Lord, deceased, and, as such administrator, he has in his possession the assets of the estate of the said Lord, real and personal, to the amount and value of $25,000. Said administrator also has in his hands worthless securities belonging to said estate, of the face value of about $40,000. Said estate is insolvent.

" 18. At the time of Lord's death, the cash on hand in said Johnson County Bank, and to its credit in other banks,. and in the hands of James R. Swallow, amounted, in the aggregate, to about the sum of $750, which came into the hands of the administrator."

"28. The property of every description and money now in the hands of defendant D. Hubbard, as administrator of the estate of said George B. Lord, amounts to about the sum and value of $25,000. No part of the said $19,000, the proceeds of the sale of said 38 bonds, is traced or traceable, by the evidence, into any of the identical property or money now in the hands of said administrator. But said $19,000 did pass into the hands of said Lord, and was by him appropriated to his own use, and mingled with and used as his own property and money."

As conclusions of law, the court held that the plaintiff had no cause of action against H. E. Hayes, either in his individual capacity, or as former administrator of Lord's estate, nor against the widow, Emma Lord, but that the plaintiff was entitled to recover $9,282, being the balance due the plaintiff of $19,000, realized from the sale of bonds, less advances made by Lord to the plaintiff, and $1,200 allowed him as commission on the sale of the $10,000 of the bonds authorized to be sold, no commission being allowed on the remainder; that the balance was a trust fund in the hands of

Lord, and was a trust fund in the hands of his administrator, and that plaintiff is entitled to a judgment for the balance, and to have the whole amount paid out of the first moneys coming into the hands of the administrator, and also to recover possession of the unsold bonds. Judgment was entered in accordance with the conclusions. The defendant *Hubbard* brings the case here.

*S. O. Thacher, F. R. Ogg,* and *Parker & Hamilton,* for plaintiff in error:

Plaintiff's petition does not set out sufficient equity to deprive the probate court of jurisdiction in this matter and give the district court jurisdiction. *Kothman v. Markson,* 34 Kas. 542; *Gufford v. Dickinson,* 37 id. 287, 291; *Estate of Fox,* 92 N. Y. 93, 95, 96.

The defect of parties defendant is apparent from the failure to join the creditors of Lord. Plaintiff alleges the insolvency of his estate, and then seeks to have the assets applied to satisfy its claim, to the exclusion of the other creditors. The creditors have an equitable interest in the estate of the debtor. Bump, Fraud. Convey. 228. The administrator is not such a representative of the creditors as to dispense with their presence in court. *Collamore v. Wilder,* 19 Kas. 67–78; *Crawford v. Lehr,* 20 id. 509, 513. See, also, *Denny v. Faulkner,* 22 Kas. 94; Maxwell, Code Pl. 25; Nash, Pl. 44; *City of Anthony v. The State, ex rel.,* 49 Kas. 246.

Treating this fund in question as a trust, which we dispute, the authorities are against defendant in error. In suits against trustees, the general rule is that all the beneficiaries are necessary parties. Story, Eq. Pl., §§ 207, 215. See, also, Story, Eq. Pl., §§ 158, 207–217; 1 Daniell, Ch. Pl., §§ 215, 220, 237, 276.

The third ground of our demurrer is, that several causes of action are improperly joined. In plaintiff's petition it asks for an accounting, that the sum found due be declared a lien upon the estate, and then seeks to recover possession of a number of bonds alleged to be in the hands of defendant

Hubbard. An equitable action for accounting and for a lien cannot be joined with an action for recovery of specific personal property.

The court on the trial erred in refusing to permit the plaintiff in error to inquire, on cross-examination of the witness Overton, into all that was said and done at the time he had testified he made the negotiations with Lord respecting these bonds. The importance of this cross-examination is apparent. Overton was and is the party instituting and carrying on this litigation. He was probably a competent witness against the dead man, for the action is nominally in the name of a corporation. Yet Overton, as an officer of the corporation, though not possessed of one dollar of its stock, will get possession of whatever can be extracted from the estate by this action. This court has held, over and over again, that great latitude should be allowed in cross-examination. See *Field v. Davis*, 27 Kas. 404; *C. B. U. P. Rld. Co. v. Andrews*, 30 id. 590; *Deford v. Orvis*, 42 id. 306, 308, 310; *Hamilton v. Miller*, 46 id. 489.

The court erred in refusing to find the facts as proved.

There is nothing in the proof to show that the corporation was in debt, except the bonds; neither is this action based on the principle of a creditor's bill; hence, the fact that Lord owned all the shares of the corporation, and had them in his possession at the time of his death, was one which the court should have found for its guidance and just conclusion of law. See *National Bank v. Drake*, 29 Kas. 311, 329; *Kent v. Mining Co.*, 78 N. Y. 159, 184–186; *Hotel Co. v. Wade*, 97 U. S. 13.

We now turn to the question of law involved in the eighth conclusion of law, and the judgment based thereon. In this connection, we insist that the doctrine of implied trust does not apply to estates in the hands of an administrator. The law of priority of claims is fixed by statute. Gen. Stat. of 1889, ¶ 2864. It seems to us that the classification of demands there enumerated is conclusive. The fifth class refers to all claims, "without regard to quality," and expressly puts

in it all demands not covered by the preceding four classes. The judgment in this case seeks to set aside all this classification, to annul the imperative words of the statute, "that all demands against the estate of the deceased person shall be divided into the following classes," and puts ahead of each and every one of these classes the claim in suit. Suppose that there were judgments rendered against Lord before he ever sold these bonds, which were liens on his real estate, or which were rendered after he sold them: could these liens be pushed aside by this doctrine of a general trust in favor of the plaintiff on all the estate of the deceased? That is the logic of the decision of the court below. It seems to us that this exact question has been passed upon by the court of last resort in New York in the case of *Estate of Fox*, 92 N.Y. 93, 95, 96. See, also, *Cragie v. Hadley*, 99 N.Y. 134, 135. The plain provisions of the statute are overlooked by the conclusion of law and judgment of the court below in this case.

In claiming this money so fraudulently obtained, the plaintiff adopts all the deceit practiced by the agent in obtaining the money. It makes every action of the agent in effecting the sale of the bonds its own. Mechem on Agency, 148, 167; *Bohart v. Oberne*, 36 Kas. 291. Bringing suit for the money so obtained is such ratification. Mechem, 157. Out of public policy, courts of law will require an agent obtaining money for his principal by illegal or fraudulent means to respond to the principal, though there are strong cases to the effect that the law will not help either party to such a contract. *Deleon v. Trevino*, 30 Am. Rep. 106, 112, notes. But the point in this discussion is, that equity will not lend its aid to place at an advantage a fund growing out of fraud and obtained by deceit over debts honestly made. The comments in Pomeroy's Equity, §§ 397, 398, 401, on this topic are convincing. The case of *Water Supply Co. v. City of Potwin*, 43 Kas. 418, contains a declaration of law on this point, pertinent and appropriate. See, also, *Bleakley's Appeal*, 66 Pa. St. 187; Pom. Eq. Jur., § 401.

A finding of fact expressly contradicting the pleading is

void. *Gray v. Crockett*, 30 Kas. 148. There was no issue in the pleading that the sale of any part of the bonds was un-authorized; hence, in any possible view, there is a clear error in the tenth finding of the court below; and in the allowance made in the twenty-first finding, instead of $1,200 brokerage, the sum allowed should have been $2,280.

If the statute we have before referred to, ¶ 2864, deter-mines the classification and priorities of claims on the estate of a deceased person, that ends the debate. None of the adjudications cited in *Myers v. Board of Education*, 51 Kas. 87, so far as we have the authorities at hand, arose on a claim for an implied trust against the estate of a deceased person. There are many reasons why the statute should not be abrogated. The case in hand shows this.

In all the cases cited in *Myers v. Board of Education*, supra, as well as in the case itself, there was no negative showing that in fact the trust fund did not enter, either directly or indirectly, into the estate in the hands of the assignee. The analogous doctrine of the result of the confusion of goods was applied. *National Bank v. Insurance Co.*, 104 U.S. 54, 67, cited in *Myers v. Board of Education*, supra, clearly holds that this doctrine of "confusion," this mingling of the trust estate with agent's own funds, renders the whole fund liable for the trust fund, "except so far as he may be able to distin-guish what is his." This exception is vital. The mere fact that the trustee owns property into which it is shown that the trust fund does not enter does not subject that property to a trust. In *Peak v. Ellicott*, 30 Kas. 156, and in the cases cited in *Myers v. Board of Education*, supra, the funds in the hands of the assignee were shown to have been enlarged by the trust fund, or at least there was such a presumption, in the absence of negative proof. In *Plow Works v. Lamp*, 80 Iowa, 722, the court held that general creditors would not be allowed payment against the trust, because they would secure pay-ment "out of property acquired by the use of trust money." The court held that "property acquired by the use of trust money became subject to the trust," thus bringing the case

within certain fixed principles. See, also, *National Bank v. Hummell*, 14 Colo. 259; *McClure v. Board of Commissioners*, 34 Pac. Rep. (Colo.) 763; *McLeod v. Evans*, 66 Wis. 401; Pom. Eq. Jur., §§ 1049, 1051, 1058; Perry, Trusts, 137; Story, Eq. 1259; Bispham, Eq. 86.

Much stress was laid in the court below on *People v. City Bank of Rochester*, 96 N. Y. 32, as though the courts of the state of Kent and Walworth had broken down the well-established equity rules of the past; but the case of *Matter of Cavin v. Gleason*, 105 N. Y. 263, shows that the underlying principle of an implied trust had not been disturbed by that decision. See, also, *Ferris v. Van Vechten*, 73 N. Y. 125; *Jenkins v. Keith*, 18 S. W. Rep. (Ky.) 1033; *Hopkins's Appeal*, 9 Atl. Rep. (Pa.) 867; *Thompson's Appeal*, 22 Pa. St. 16; *National Bank v. Goetz*, 32 Am. Rep. 119 (138 Ill. 127); *Wetherell v. O'Brien*, 33 Am. Rep. 221 (140 Ill. 146).

In *Peak v. Ellicott*, 30 Kas. 156, the court places its decision on the ground that the "trust fund" lay in the hands of the assignee, and that "it could be followed by the principal and separated from the money of the wrongdoer." And the English cases cited to sustain this doctrine go no farther. Neither does *Myers v. Board of Education*, 51 Kas. 87, go beyond this.

*Houk & Whitelaw*, and *S. T. Seaton*, for defendant in error:

The administrator of an estate stands in the shoes of the decedent. He is the legal owner of the personal property of the estate on which he administers, and is the debtor of claimants to the extent of assets in his hands belonging to the estate. He is the only proper person to sue or to be sued in personal actions, unless he is acting fraudulently and refuses to protect the interests of creditors. *Harvey v. McDonnell*, 21 N. E. Rep. 695; *Woods v. Irvin*, 21 Atl. Rep. 603; *Dandridge v. Washington's Executors*, 2 Pet. 376; Story, Eq. Pl., §§ 140, 141; *Dwersey v. Johnson*, 93 Ill. 547.

In this case the company has precisely the same rights and remedies against the administrator that it would have had

against the deceased had he not died. There can arise no question of the rights of an assignee for value without notice. The administrator is now the trustee of the company, as to the bonds and proceeds of the sale of the bonds sold by Lord.

It is by no means a difficult matter to find an abundance of late decisions on the law of this case, and for the convenience of the court we will enumerate them. *Peak v. Ellicott*, 30 Kas. 156; *Ellicott v. Barnes*, 31 id. 171; *Myers v. Board of Education*, 51 id. 87; *Foster v. Rinker*, 35 Pac. Rep. 470, and a long list of cases therein cited; *Thompson v. G. S. Bank*, 8 Atl. Rep. 97; *Smith v. Combs*, 24 id. 9; *People v. City Bank*, 96 N. Y. 32; *McLeod v. Evans*, 66 Wis. 401; *Francis v. Evans*, 33 N. W. Rep. 93; *School District v. Rogers*, 45 id. 908–1049; *Shotty v. Shotty*, 140 Ill. 81; *Harrison v. Smith*, 83 Mo. 210; *Bank v. Armstrong*, 148 U. S. 50; *Peters v. Bain*, 10 Sup. Ct. Rep. 361; *Barnes v. Evans*, 36 N. W. Rep. 629; *Bank v. Hummell*, 23 Pac. Rep. 986; *Nurse v. Salester*, 46 N. W. Rep. 1102; *Griffin v. Chase*, 54 id. 572; *People v. Bank*, 96 N. Y. 35; *Libby v. Hopkins*, 104 U. S. 309; 36 Fed. Rep. 59; 33 id. 405; *Bank v. King*, 57 Pa. St. 202.

The company has filed a cross petition in error, and alleges, on the ground of error in the court below: (1) That the trial court allowed the company only 6 per cent. per annum on the amount found due the company by the administrator, whereas it was entitled to 7 per cent. (2) That the court allowed the administrator a credit of $1,200 for services rendered by George B. Lord in the sale of $10,000 of bonds.

The plaintiff below did not ask for a new trial, but excepted to the action of the court. This exception, we contend, was all that was necessary to give this court the power to enlarge the judgment rendered in the court below according to the prayer of the cross petition in error filed by defendant in error. We make no complaint of any finding of fact by the trial court, but only complain of the application of the law to the facts found in the two particulars above mentioned. See *Lacy v. Dunn*, 5 Kas. 569. See, also, *Koehler v. Ball*, 2 Kas. 171; *Major v. Major*, 2 id. 338; *McCullagh v. Allen*,

10 id. 150; *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.*; 18 id. 177; *Stapleton v. Orr*, 43 id. 170. We conclude, therefore, that a motion for a new trial by plaintiff below was wholly unnecessary.

We think that the plaintiff below (defendant in error) has the right to file a cross petition in error. See *Stettauer v. Carney*, 20 Kas. 475, 495; *Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 id. 158; *Hanna v. Barrett*, 39 id. 446.

The trial court committed error in allowing the administrator a credit of $1,200 for services performed by George B. Lord in the sale of $10,000 of the bonds of the company. See Story, Agency, §§ 331–334; *Sumner v. Reicheniker*, 9 Kas. 320; *Dryfoos v. Cullinan*, 17 id. 452; *Hobson v. Peak*, 10 S. Rep. 762; *Harney v. Cook*, 24 Ill. 134; *Vennum v. Gregory*, 21 Iowa, 326; *Wadsworth v. Adams*, 138 U. S. 380; *Blair v. Shaeffer*, 33 Fed. Rep. 228.

The opinion of the court was delivered by

ALLEN, J.: Numerous assignments of error are made in this case, and many questions are discussed in the briefs.

I. The plaintiff in error, Hubbard, H. E. Hayes, individually and as former administrator of Lord's estate, the Johnson County Bank, which was owned entirely by Lord, and Emma Lord, his widow, were all joined as defendants. This, it is urged, was a misjoinder of parties. The defendant Hubbard moved to strike out those parts of the petition relating to other defendants, and also to require the plaintiff to separately state and number its causes of action. We fail to see how the defendant was materially prejudiced by the joinder of the other parties, especially as the court found that there was no cause of action against them. The petition states but one cause of action, equitable in its nature, and there was no occasion for separately stating and numbering. All of the bonds were delivered to Lord under one contract and as one transaction, and the plaintiff might properly recover in one action the unsold bonds and the proceeds of those that had been negotiated.

*1. Trust funds, action to recover—practice.*

These motions being overruled, the defendant demurred to the petition, on the ground that there was a defect of parties defendant, that several causes of action were improperly joined, and that the petition did not state facts sufficient to constitute a cause of action. An excess of parties, it has been frequently held, is not a defect within the meaning of the statute. It is claimed that the creditors of Lord's estate are necessary parties to the determination of the question of plaintiff's right to priority in payment out of the funds of the estate, and that the court cannot in their absence adjust the priorities. It appears that, on their application, between 60 and 70 creditors, representing claims amounting to over $40,000, were made parties, and appeared at the trial. It has never been supposed that, in an action against an executor or administrator, who stands as the representative of the decedent, the creditors, legatees or distributees entitled to the proceeds of the estate were necessary parties, nor are we able to perceive why they are so in this case. Of course the rights of persons not parties are not concluded by the judgment rendered. Any creditor or other person not before the court at the trial may undoubtedly protect whatever rights he has in a proper action, and may establish such countervailing equities as he has. We think the other grounds of the demurrer were not well taken. We think the motion to make the petition more definite and certain was also properly overruled.

2. Creditors, as defendants.

II. Complaint is made of the refusal of the court to permit the plaintiff to inquire of Overton with reference to the delivery of stock in the plaintiff corporation by him to Lord at the time the arrangement was made for the negotiation of the bonds. In this connection it is earnestly insisted that, as it appeared in evidence that all of the shares of stock issued by the plaintiff corporation were in Lord's possession at the time of his death, and in the hands of Hubbard, as administrator, at the time of the trial, it was competent for the defendant, on cross-examination of Overton, to inquire fully into all the details of the transaction between him and Lord

with reference to the sale of the bonds and the delivery of the stock to him. Overton, having testified with reference to the progress of the work on the ditch, the arrangement with Lord with reference to the sale of the bonds, the receipt of moneys from Lord which he claimed were advances, and other matters, on cross-examination was asked the question : "At the time these bonds were issued and delivered to Mr. Lord, were there any negotiations between you as to the stock of the company ?" This was objected to as not cross-examination, and as immaterial. Counsel for the defendant then stated that he desired to prove by the witness that, at the time of the negotiation whereby Lord took the bonds to negotiate, it was understood that 930 shares, which stood in the name of the witness, should be transferred to Mr. Lord. The court excluded the testimony. There was no allegation in the answer of the defendant asserting the ownership by Lord of all the stock in the corporation. The ruling of the court was that, under the pleadings, and especially on cross-examination, the question was not a proper one. We find no error in the ruling of the court. Conceding, for the purpose of the argument, that the witness would have testified that all the stock in the corporation was transferred to Lord, still it would not make him, under the circumstances developed in this case, the owner of the corporation, nor of its property. It is an undisputed fact that $19,000 of bonds of the corporation, secured by a mortgage on all its property, were outstanding, and in the hands of *bona fide* holders, who had a primary lien upon the property of the corporation. These creditors are entitled to have the property of the corporation protected and preserved for their security and ultimate payment, and their rights are paramount to those of the stockholders. Conceding that Lord owned all the stock, he yet had no right to divert moneys raised from a sale of the company's bonds to his own individual use. There was no substantial error, therefore, in excluding this testimony. Had it appeared that the corporation was out of debt, so that the ownership of the stock would carry with it all beneficial interest in funds due

the corporation, the question counsel seek to raise would have been presented.

III. Counsel for the plaintiff in error labor diligently and earnestly to distinguish this case from that of *Myers v. Board Education*, 51 Kas. 87. It is claimed that the doctrine of implied trusts does not apply to assets in the hands of an administrator; that ¶ 2864 of the General Statutes establishes the rules governing the distribution of the estate of a deceased person; that these rules override those equitable considerations upon which courts act in reference to an estate, either in the hands of a living person or of his assignee; that where death intervenes, and an administrator is appointed, the statute furnishes the only rule. The case of *Estate of Fox*, 92 N. Y. 93, is cited in support of this contention. That the statute fixes the rules for the disposition of the estate of the deceased person cannot be doubted, but the point under consideration is, whether the proceeds of the bonds sold by Lord constitute a part of his estate or not. It certainly would not be claimed that, if the identical money received by Lord as the proceeds of the bonds came in one package into the hands of the administrator, he could use it as a part of Lord's estate. It would be the money of the plaintiff alone, in which the administrator would have no interest whatever. Let us go a step further, and assume that it had been mingled with other money of the deceased, but was still all retained: can there be a doubt that the plaintiff would have a right to have it counted out, and separated from the whole sum; or, had it been invested in some specific property to which it could clearly be traced, would a court of equity hesitate to declare the real ownership in the plaintiff, notwithstanding the death of Lord?

4. Administration—following trust fund.

The theory on which courts proceed in all such cases is, and must be, that no title to the trust fund ever passed to the trustee, and that, however it has been mixed and mingled with his other property, the title still remains in the *cestui que trust*.

In reason there can be no sound distinction between the case of an administrator and that of an assignee, and the prin-

ciple on which the courts hold that the assignee must pay over the trust fund in advance of payment to the general creditors is, that the owner of the fund has a title which the trustee cannot destroy or divest by any act of his own, without the consent or knowledge of the beneficiary. The Fox case does not convince us of the correctness of counsel's contention. The doctrine on which the courts act in all this class of cases is broadly stated by Story, as follows:

"The general proposition which is maintained, both at law and in equity, upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right (not being *bona fide* purchasers for a valuable consideration without notice) any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it, or on those who claim in privity with him." (2 Story, Eq. Jur., § 1258.)

While most of the authorities cited are suits against either the trustee or his assignee in bankruptcy or insolvency, the same equitable doctrine was applied in *Smith v. Combs*, 24 Atl. Rep. (N. J. Ch.) 9, which was a case against the administrator of an executor who had used funds belonging to his testator's estate, and the court places its decision on the ground that trust property is specifically held by the trustee for the owner, and not as his own property or for the benefit of his creditors. We concede that, if the proceeds of these bonds were in equity a part of Lord's estate, the rules prescribed by the statute would govern. It is said that, in selling the bonds, Lord committed a fraud on the purchasers; that a fraudulent prospectus was issued and circulated to induce persons to buy. A copy of a pamphlet published by Lord, containing false representations as to the ditch and property of the company, is contained in the record, but our attention is not called to any evidence showing that any purchaser of bonds relied on the representations contained in the pamphlet, or was fraudulently induced by Lord to make the purchase.

No holder of any of these bonds is in court complaining. It does not appear that the representations contained in Lord's pamphlet were authorized by the plaintiff, but counsel contend that, by bringing suit for the proceeds of the bonds, the company ratifies and adopts all of Lord's acts in making the sale. It is not necessary to consider, in this case, the effect that any such ratification would have on the plaintiff's rights, in an action between it and the holders of the bonds, but clearly neither Lord nor his personal representative can set up his own fraud in disposing of the bonds, committed without the knowledge or consent of the plaintiff, to defeat the plaintiff's right to recover in this action. A mere statement of the proposition seems ample argument of the question.

We are unable to distinguish the facts of this case, with reference to the mingling of the trust funds with the general estate of the trustee, from those in *Myers v. Board of Education,* supra. It is urged that there is a negative showing here to the effect that the funds were not mingled with the assets of Lord's bank. We do not so understand the evidence nor the findings of the court. Lord was a banker, carrying on his business at Olathe, Kas., and having a branch or agency in Nashua, N. H. These bonds were negotiated through that agency, and the court found that the $19,000 did pass into Lord's hands, and was by him appropriated to his own use, and mingled with and used as his other property and money. There is no showing that any specific portion of this money was lost or squandered, but the fair and necessary implication is, that his estate received the full benefit of it. In the Myers case, the funds had been mingled with the funds of the bank, and used in the ordinary course of the private banking business of John Higinbotham, in the payment of the debts of the bank. It would be difficult to find two cases more nearly identical in the circumstances. The mere fact that the money was received at a point distant from Lord's bank appears to us of no consequence, for funds were remitted back and forth as occasion required. We think the argument of the learned

3. Case, followed.

counsel is directed against the position taken by this court in *Peak v. Ellicott*, 30 Kas. 156, and *Myers v. Board of Education*, 51 id. 87. We have again carefully examined the question involved, and are satisfied with the rule as declared in these cases.

A cross-petition in error is filed by the defendant in error, and the allowance of commissions to Lord on the sale of $10,-000 of the bonds is challenged as erroneous. It is urged that, having violated his trust, he has forfeited all right to compensation. The sale of $10,000 of the bonds was authorized, however. It was only when that sum was exceeded that he acted beyond his authority, and the court has allowed him no compensation for the excess. In an equitable action, such as this is, we should be loath to disturb the judgment of the trial court in refusing to enforce a forfeiture of compensation because of a misappropriation, where the effect of a reversal would be not to deprive Lord himself of the allowance, but to deprive his other creditors of it.

5. Accounting by trustee—compensation.

We perceive no substantial error in the rulings, findings, or judgment of the court. The decree is affirmed.

JOHNSTON, J., concurring.

After the foregoing opinion was handed down, and judgment entered thereon, a motion for a rehearing was filed and argued. The motion was overruled by the court, and thereafter HORTON, C. J., filed his own views of the case, as follows:

I think that the principle announced in *Peak v. Ellicott*, 30 Kas. 156, and *Ellicott v. Barnes*, 31 id. 170, ought not to be extended.

In *Peak v. Ellicott*, supra, it was observed that,

"Wherever a fiduciary relationship exists, and money coming from the trust lies in the hands of the person standing in that relationship, it can be followed by the principal and separated from any money of the wrongdoer."

If Lord had real estate at the time of his death which

was acquired before the sale of any of the bonds referred to in the petition, no trust can be impressed thereon to repay the Alamo company for any of the proceeds of the bonds received by Lord in his lifetime. (*District Township of Eureka v. Bank of Fontanelle*, 55 N. W. Rep. [Iowa,] 342; *McClure v. Board of Co. Comm'rs*, 34 Pac. Rep [Colo.] 763.)

In order to establish a trust, it must be shown that the estate in the hands of the administrator has been actually augmented by the trust fund; otherwise, the rights of the company are not superior to those of the general creditors of the estate. If a trust is to be established, it must be on the ground that the proceeds of the bonds, not paid over at the death of Lord, have increased his estate, and that such increase came into the hands of the administrator.