[No.2176, Aug. 27, 1918.]
# BOARD OF COMMISSIONERS OF DONA ANA COUNTY v. CLAPP.

### SYLLABUS BY THE COURT.

When trust funds have been commingled with the general funds of a bank, before a trust upon such general funds can be imposed, as against creditors of the bank, it must appear that the trust fund in some form still exists and came into the hands of the receiver of the insolvent bank. Daughtry v. International Bank of Commerce, 18 N. M. 119, 134 Pac. 220, followed.

Appeal from District Court, Dona Ana County; Medler, Judge.

Action by the Board of County Commissioners of Dona Ana county against Lafayette Clapp, receiver of the First State Bank of Las Cruces. Judgment for plaintiff, and defendant appeals. Reversed.

WADE & TAYLOR and W. H. H. LLEWELLYN, all of Las Cruces, for appellant.

County Commissioners v. Clapp, 24 N. M. 522.

H. B. HAMILTON, of Carrizozo, and YOUNG & YOUNG, of Las Cruces, for appellee.

## OPINION OF THE COURT.

MECHEM, District Judge. The plaintiff, appellee here, seeks to impose upon assets in defendant's hands a lien in its favor on account of deposits. Judgment establishing a lien in the plaintiff's favor was rendered upon a stipulation between the parties. The stipulation is in the following words:

"Come now the parties herto by their respective attorneys, the defendant by his attorneys, Messrs. Wade & Taylor and W. H. H. Llewellyn, and the plaintiff by its attorneys, Young & Young, and stipulate and agree as follows, to wit:

"First, That the sum of $1,992.05, deposited by the said Courtland O. Bennet in the First State Bank of Las Cruces, and credit on the books of the said bank to, C. O. Bennett, County Clerk,' was composed of and represented fees and emoluments received by the said Bennett as county clerk and ex officio clerk of the district court for Dona Ana county, New Mexico.

"Second. That the sum of $3,546.40, deposited by the said Courtland O. Bennet in the First State Bank of Las Cruces, and credited on the books of the said bank to 'C. O. Bennett, County Clerk,' was composed of and represented fees and emoluments received by the said Bennett as county clerk and ex officio recorder of and for Dona Ana county, New Mexico.

"Third. That the said First State Bank of Las Cruces was aware, at the time the said moneys were deposited with 'it by the said Courtland O. Bennett, that the same were composed and made up of fees and emoluments received by the said Bennett in his capacity as county clerk and ex officio district clerk and as county clerk and ex officio recorder of and for Dona Ana county, New Mexico.

"Fourth. That at all times between the 12th day of January, A. D. 1914, upon which said last-mentioned date the said First State Bank ceased to do business, the assets of the said bank exceeded the total sum deposited in it, as aforesaid, by the said Courtland O. Bennett, to wit, the sum of $5,346.87, and that the assets of said bank coming to the hands of the defendant receiver, at the time he qualified as such, exceeded the said sum of $5,346.87, and that the assets of said bank now in the hands of said defendant receiver exceed said sum.

"'Fifth. That the moneys mentioned in the complaint were deposited by the said Courtland O. Bennett with said bank as a general and not a special deposit, and were placed from time to time as they were deposited in the general fund of the bank, where they were commingled with the other funds of the bank and with other funds of the same character of the property of other parties; that the general fund of the bank was used in carrying on and in conducting the business of the bank, and that no part of the moneys mentioned in the complaint can* be identified with any moneys of the insolvent bank coming into the hands of the receiver, or traced into any asset or assets of the said bank coming into the hands of the receiver; that the approved claims of depositors and other general creditors of the insolvent bank are greatly in excess in aggregate amount of the aggregate value of the said assets; that the Three Saints Ditch and divers other claimants likewise assert preferential claims upon the assets of the said bank in the custody of the receiver for moneys placed with the insolvent bank in trust and without authority commingled by the said bank with the moneys in its general fund and expended in carrying on and conducting its business; and that the moneys of the said bank on hand at the time of its failure did not exceed in the aggregate the sum of $75.''

Admitting that the deposits by Bennett constituted a trust fund, the only question presented for our decision is whether or not, on the state of facts presented by the above stipulation, a lien can be declared in plaintiff's favor on the assets in the hands of the defendant. The defendant contends that the case of Daughtry v. International Bank of Commerce, 18 N. M. 119, 134 Pac. 220, is decisive in his favor in this case. We do not believe that two cases, presenting as to ultimate facts greater similarity, will generally be found. In each case there were assets sufficient to satisfy the claim in the hands of the receiver. In this case the money on hand when the receiver took charge of the bank did not exceed $75. In the Daughtry case the receiver received $81.10. In this case it is stipulated that the moneys deposited were commingled with the general fund of the bank, and with the general fund was used in carrying on and conducting the business of the bank, and ''that no part of the moneys mentioned in the complaint can be

identified with any moneys of the insolvent bank coming into the hands of the receiver, or traced into any asset or assets of the said bank coming into the hands of the receiver.'' In the Daughtry case this court, speaking through Mr. Justice Parker, said:

"We have, then, a case of a deposit of money under such circumstances as to make it a trust fund, commingled with the general funds of the bank prior to insolvency, and where it appears that there comes into the hands of the receiver of the insolvent bank moneys and credits largely in excess of the claim of the said cestui que trust. But appellant omits to allege the essential fact necessary to enforce the trust. It appears from the petition and receiver's report that only $81.10 in money came to the receiver. Consequently all of the appellant's money, except that amount, at least, had been in some way used by the bank. Whether any of appellant's money had been deposited in the other banks where credits are shown does not appear, either from the petition or report. For all that appears these credits may have arisen from the deposit of funds long prior to the receipt of appellant's money by the bank and may bear no relation whatever to the same. The presumption, therefore, much relied upon by appellant, to the effect that, if the trustee used funds out of the mass in which those of the cestui que trust have been commingled, the funds so used will be held to be those of the trustee, and not those of the cestui que trust, fails. If the trustee had always had on hand, from the receipt of the trust fund to the date of insolvency, a sufficient amount of the commingled mass to pay the cestui que trust, there is room for the operation of the presuption. But where the fund has been dissipated, as in this case, allegation and proof as to what has become of it are necessary in order to trace the same. This is clearly pointed out in Crawford Co. Com'rs v. Strawn [157 Fed. 49, 84 C. C. A. 553], 15 L. R. A. (N. S. 1100, where, in an opinion by Judge Lurton, it is said: 'The trust fund is not traced into any of the rediscounts or collections, which in part made up the credits in these banks. That the moneys remitted were not out of the trust fund is to be presumed; for the presumption upon which equity acts in respect of the character of the funds drawn out of the commingled mass of money in the bank's vaults is that the bank drew out only its money, leaving in its vault the money which it was obligated to retain and not use for any private purpose."

Adhering to the law as laid down in the case of Daughtry v. International Commerce Bank, supra, the judg-

ment of the lower court in this case must be reversed; and it is so ordered.

PARKER and ROBERTS, J.J., concur.