CANNON COUNTY *et al v.* S. S. MCCONNEL *et al.**

*(Nashville,* December Term, 1925.)

**BANKS AND BANKING.** County's share of cost of building road with State, in closed bank, held county's and not preferred claim (Acts 1919, chapter 175, sections 3 and 4; Acts 1909, chapter 305; Acts 1917, chapter 74).

By authority of Acts 1919, chapter 175, sections 3 and 4, county and State agreed to build road and share cost. County sold bonds to raise its share, and, under Acts 1909, chapter 305, deposited it in bank which closed. *Held,* that fund deposited belonged to county and not to state, in view of Acts 1917, chapter 74, and hence was not preferred claim.

Acts cited and construed: Acts 1919, chs. 149, 175; Acts 1909, ch. 305; Acts 1913, ch. 26; Acts 1917, ch. 74.

Cases cited and approved: Hawkins Co. v. Railroad Co., 1 Tenn. Cas., 303; White's Creek Turnpike Co. v. Marshall, 61 Tenn., 118; Justices of the Peace of Williamson Co. v. Jefferson, 41 Tenn., 419; People v. Ingersoll, 58 N. Y., 1; Fid. & Guar. Co. v. Rainey, 113 S. W., 397; State ex rel. v. Cummings, 172 S. W., 290; Demoville v. Davidson Co., 10 S. W., 353; Nashville v. Towns, 37 Tenn., 186; Ferguson v. Tyler, 183 S. W., 162; Liles v. Creveling, 268 S. W., 625; Maryland Cas. Co. v. McConnell, 257 S. W., 410.

Case cited and distinguished: Ledbetter v. Turnpike Co., 73 S. W., 117.

Codes cited and construed: Secs. 70, 493, 494, 495, 496, 499, 6038, 1624, 1626, 1707 (S.).

---

*Headnote 1. Banks and Banking, 7 C. J., Section 543.

---

FROM CANNON

---

Appeal from the Chancery Court of Cannon County.
—Hon. W. R. Officer, Chancellor.

Cummings & Melton, Walter Hancock, S. S. Brown
and Jesse Davenport, for appellants.

F. M. Thompson and H. T. Stewart, for appellees.

Mr. Justice McKinney delivered the opinion of the
Court.

When the First State Bank of Woodbury closed its
doors on August 9, 1923, there was on deposit with said
bank a road fund in the sum of $25,000. The bank is
hopelessly insolvent.

The question for determination is, Did this fund be-
long to the State of Tennessee or to the county of Can-
non? If the former, it is a preferential claim, and the
assets of the bank are probably sufficient to pay it in full.

The chancellor held that it belonged to the State. In
so holding we are of the opinion that he committed error.

Pursuant to chapter 175 of the Acts of 1919, the county
court of Cannon county entered into an agreement with
the State to provide funds sufficient to defray one-third
of the cost of constructing the Memphis to Bristol high-
way through Cannon county.

Sections 3 and 4 of said act are as follows:

"Sec. 3. Be it further enacted, that if the State high-
way department should at any time propose or agree to
supply or appropriate a specified sum of money for the
construction or improvement of any road and bridge or
bridges, or any roads and bridges in any county in the

State, the county court of such county by majority vote of said court, in regular or called session, is hereby authorized and fully empowered under the provisions of this act, to appropriate for the said purpose a sum not to exceed double the amount contributed by the said State highway department and should there not be funds in the county treasury sufficient to meet the said appropriation then without a submission to a vote of the legally qualified voters of such county the county court of such county is hereby authorized and fully empowered to issue interest-bearing coupon bonds for the amount required to co-operate as a financial basis with the State highway department, in order to secure Federal or State or Federal and State aid for the said improvement; provided such bonds as may be issued under the provisions of this section and as herein provided shall not in the aggregate exceed five per cent. of the taxable values of such county which may either be in single order; or successive orders as the said court may determine; provided, further, the same provisions shall apply to bonds issued under this section relating to tax, interest, sinking fund and retirement of same as provided for bonds issued by majority vote of the legally qualified voters of such county under the provisions of this act, which shall be set out by order of the said court, and all bonds issued under the provisions and authority of this act shall be incontestable obligations of such county issuing same.''

"Sec. 4. Be it further enacted, that when a bond issue has been regularly ordered, the county court shall cause a notice of the same thereof, or of such portion thereof as it then deems expedient to sell to be published at least once in a newspaper published in the county and in a

newspaper or financial journal published in New York
not less than fifteen days before the date fixed for such
sale and copies of such notice shall be mailed to leading
bond firms of the country. The sale of bonds shall be
by competitive bidding by sealed bids, and unless such
sale is made by the county court, it shall be made by the
revenue commissioners of the county acting with the
judge or chairman of the county court, or by the finance
committee, if a finance committee has been elected, acting
together with said judge or chairman, provided the coun-
ty court has by resolution or  order delegated such
power of sale. A report in full of any sale not made by
the county court shall be made to the next term of the
court and spread on the minutes. The proceeds of sale
shall be deposited with the county trustee, who shall give
a bond for the same in such amount with such surety and
of such form as may be approved by the judge or chair-
man. The finance committee of any county may arrange
with a bank or banks for receiving and holding same,
as provided in chapter 305, Acts of 1909. If there be no
finance committee, the judge or chairman and the rev-
enue commissioners may make such arrangements.''

The basis of this particular bond issue was a written
proposal by the State highway commission as follows:

''By virtue of chapter 149 of the Acts of 1919, chap-
ter 26, Acts of 1913 [First Ex. Sess.], as amended by
chapter 175 of the Acts of 1919, and chapter 74 of the
Acts of 1917, the said commission proposes to Cannon
county to furnish from year to year as fast as the moneys
are available from the State and federal funds an amount
for the purpose of constructing certain roads and nec-
essary culverts and bridges within the limits of Cannon

county, designated and deescribed as follows: Memphis to Bristol highway from Rutherford county line to Warren county line.

"The amount that the State highway commission will furnish shall be two-thirds of the cost of construction of said roads, bridges, and culverts of the county, and its part shall be one-third.

"Cannon county must adopt a resolution in consideration of the foregoing proposition and to issue its bonds and provide its one-third part of said road construction cost within fifteen days after the State highway commission's part of said fund is available and has been appropriated to the account of said roads. This 5th day of August, 1919, Nashville, Tenn."

The county, by proper resolution or ordinance, accepted this offer, and authorized a $60,000 bond issue.

It was likely contemplated, as is usually the case, that the construction of the highway would be delayed, and the county, in the meantime, expected to receive interest on the fund derived from the sale of these bonds, and it is stipulated that the highway department consented to this plan.

Section 6 of the resolution, adopted by the county court, is as follows:

"Be it further ordained, resolved and ordered that: After deducting the actual costs and expenses of this sale the proceeds thereof shall be turned over to the trustee of the county under such orders of the court as may be made under the acts under which these bonds are issued until the same may be loaned or invested as hereinbefore provided."

Thirty thousand dollars of the fund derived from the

sale of the bonds was deposited by the county in said First State Bank; five thousand dollars of which was checked out before the bank suspended.

Presumably these funds were deposited in the name of the county trustee. The bank was to pay six per cent. interest upon the daily balance.

The record presents this situation: The State proposed, for the benefit of the county, to pay two-thirds of the cost of constructing a road through the county, provided the latter would pay the remaining one-third. This was agreed to. The county raised its part of the fund by selling bonds upon its faith and credit, as it was authorized to do. The purchaser of the bonds paid the consideration to the county. The county loaned the funds to the bank, for which it was paid interest, and the fund was so loaned when the bank closed its doors.

We are unable to see upon what principle it can be said that this fund belonged to the State, and we are cited to no authority supporting such a conclusion. While the county emanates from and is an arm of the State, its entity is distinct for many purposes, and the revenue of each is collected and disbursed by its fiscal agent independent of the other.

With reference to the nature of a county, this court, in *Ledbetter* v. *Turnpike Co.*, 73 S. W., 117, 110 Tenn., 94, said:

"Counties in Tennessee are corporations, and the justices of the peace, assembled in county court, are their representatives, and authorized to act for them. They are vested with the power to acquire property for county purposes, and the grants and conveyances therefor are required to be made to the county acquiring the same.

They may sue and be sued as other corporations; all suits instituted in their interest to be brought in the name of the county suing, except actions against delinquent officers and their sureties, which shall be brought in the name of the State for the use of the county. Shannon's Code, sections 493, 494, 495, 496, 499; *Hawkins County* v. *Railroad Co.*, 1 Tenn. Cas., 303.

"The county courts, composed of the justices of the peace, the representatives and authorized agents of the counties, are given exclusive control of the establishment and supervision of roads and ferries. Shannon's Code, section 6038.

"Public bridges are included in the general term 'roads and highways.' Shannon's Code, section 70.

"But public streets in incorporated towns and cities are not under the control of the county court. *White's Creek Turnpike Co.* v. *Marshall*, 2 Baxt., 118.

"Counties are also authorized to build turnpikes and bridges, and pay for the same by the issuance of the bonds of the counties, when authorized by special legislation, to be paid out of the public county funds, and by special levies for that purpose; and, in all cases of laying out of new roads or changing the location of old ones, the damages assessed for the right of way taken are adjudged against the county having the same done, to be paid out of the county funds. Shannon's Code, sections 1624, 1626, 1707; *Justices of the Peace of Williamson County* v. *Jefferson*, 1 Cold., 419.

"From this it clearly appears that the public roads and bridges of each county are constructed, paid for, and controlled by the county in which they are located, and the ownership and title thereto, which is generally an

152 Tenn.—36.

easement, is vested in the county in its corporate capacity; and, under the elementary rules of pleading and practice, suits brought to protect such roads and bridges, and enforce the rights of the county therein, which are the same as the rights of the public, must be brought and prosecuted in the name of the county. This has been repeatedly held by this court.''

Chapter 74 of the Acts of 1917, creating a State highway commission, and providing for the location and construction of State highways, contains this provision:

''This entire fund federal and State shall be expended on the road or roads designated by the department in each county, as hereinafter provided. Before receiving the benefits of this act, every county, through its county court, by proper order, shall give to the department a sufficient guaranty that the county will comply with the requirements of this act.''

That the funds of the State and county are separate and distinct, and are so treated under our system of government, finds support in many of our legislative acts.

Chapter 305 of the Acts of 1909 provides that the counties of the State may contract with banks ''to pay interest on daily balance of the county funds;'' that the county fiscal agents shall require the bank to execute a bond ''to save the county harmless;'' that upon the county trustee depositing the funds he ''shall be released from liability for losses to the county in consequence of said contract and deposit.''

The very act (1919) under which the county sold the bonds provided that, with respect to the proceeds: ''The finance committee of any county may arrange with a

bank or banks for receiving and holding same, as provided in chapter 305, Acts of 1909."

This is precisely what the finance committee of Cannon county did.

In 15 Corpus Juris, 589, it is said: "Moneys collected by a county need not be paid to the State, in the absence of a statute showing that they belong to the State."

In the footnote to the above text, the editor says: "All money raised by legislative authority on a county's credit, and for which its corporate bonds had been issued and sold to *bona-fide* purchasers, belongs to the county, although the amount realized may be in excess of the amount necessary to accomplish the purpose contemplated by the legislative authorization. Such excess is not the property of the State or recoverable for, or payable into, the State treasury"—citing *People* v. *Ingersoll,* 58 N. Y., 1, 17 Am. Rep., 178.

In *Fidelity & Guaranty Co.* v. *Rainey,* 113 S. W., 397, 120 Tenn., 357, this court held that revenue due the State was a preferential claim, while that due the county was not.

The county judge of Cannon county evidently considered the deposit the property of the county because only two days before the bank ceased to do business he had the bank to transfer the deposit to "Hill McAlister, treasurer." It is stipulated that this was done with the consent of the bookkeeper in the highway department, but this bookkeeper had no authority to bind the State, and the transfer was invalid and not binding on the State.

Counsel for the county rely upon *State ex rel.* v. *Cummings,* 172 S. W., 290, 130 Tenn., 566, L. R. A., 1015D, 274.

In that case Hamilton county, pursuant to legislative authority, sold bonds to construct a designated road through the county.

Before the work was begun, the legislature passed an amendatory act diverting the bond proceeds to other roads, and it was held that the legislature had the power to divert the fund. The legislature would not have power to divert the fund to any other than a county purpose. *Demoville* v. *Davidson County,* 10 S. W., 353, 87 Tenn., 214; *State ex rel.* v. *Cummings,* supra.

The legislature cannot divert the revenues of a county to a municipality located in the county. *Nashville* v. *Towns,* 37 Tenn., 186; *Demoville* v. *Davidson County,* supra; *Ferguson* v. *Tyler,* 183 S. W., 162, 134 Tenn., 25.

While possessing the power to divert a particular fund, created under the taxing power, to another county purpose, such diversion does not affect its title, and it is still the property of the county.

Counsel also cite *Liles* v. *Creveling,* 268 S. W., 625, 151 Tenn., 61. That case, upon the principle announced in the Cummings case, simply held that the State had the power to change the course or route of a highway, and is not in point.

Finally, counsel refer to *Maryland Casualty Co.* v. *McConnell,* 257 S. W., 410, 148 Tenn., 656.

In that case there was no controversy as to the fund belonging to the State; the only question being whether the State, under the facts, was entitled to a preference.

Treating this fund as the property of the county, and there being no evidence that it was ever turned over to any agent of the State authorized to receive same, it results that the $25,000 deposit is not a preferred claim,

and the decree of the chancellor, in this respect, will be reversed.

We are further of the opinion that the county and the bondsmen, defendants to the cross-bill, should pay all costs of the cause.

The chancellor decreed as to other matters, from which no appeal was prosecuted.

The cause will be remanded for the purpose of executing so much of the chancellor's decree as is not in conflict with this opinion.