(July 3, 1926.)

THE UNITED STATES NATIONAL BANK OF PORT-LAND (OREGON), a Corporation, Appellant, v. D. W. STANDROD & COMPANY, BANKERS, a Corporation of Blackfoot, Idaho, and E. W. PORTER, as Commissioner of Finance of the State of Idaho, Respondents.

[248 Pac. 16.]

BANKS AND BANKING—INSOLVENT BANK—TRUST FUND—EVIDENCE—SHOWING REQUIRED TO IMPRESS TRUST.

1. Where bank on receipt of draft in trust wrongfully indorsed it to president, and immediately reaccepted it for deposit, it was still charged with trust as respects priority.

2. As respects priority, evidence *held* insufficient to establish that funds held in trust by bank came into hands of receiver on bank's insolvency.

3. In order that one claiming trust fund may impress trust on property of defunct bank, to obtain priority he must trace such fund into hands of bank.

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. Ralph W. Adair, Judge.

Action to compel classification of claim against insolvent bank under Sess. Laws 1921, of chapter 42, section 13, subdivision 2. From judgment allowing classification under subdivision 4, plaintiff appeals. *Affirmed.*

John W. Jones and Guy Stevens, Platt, Platt, Fales & Smith, for Appellants.

Where one bank transmits to another an item for collection and remittance with specific instructions, and the receiving bank collects the item without remitting to the sending bank, and the receiving bank goes into the hands of a receiver, the sending bank has a preferential claim on all the assets of the receiving bank. (*National Life Ins. Co. of Vermont v. Mather*, 118 Ill. App. 491; Zane, Banks & Banking, secs. 133, 341; *Wallace* v. *Stone*, 107 Mich. 190, 65 N. W. 113; *German Fire Ins. Co. v. Kimble*, 66 Mo. App. 370; *Griffin v. Chase*, 36 Neb. 328, 54 N. W. 572; *Boone County Nat. Bank v. Latimer*, 67 Fed. 27; Jones, Collateral Securities, secs. 40, 41, 42, 43, 44; *Harding v. Eldridge*, 186 Mass. 39, 71 N. E. 115; *Hickok v. Couperthwait*, 134 App. Div. 94, 122 N. Y. Supp. 78; *Fairbanks v. Sargeant*, 117 N. Y. 320, 23 N. E. 1039, 6 L. R. A. 475; *American Can Co. v. Williams*, 178 Fed. 420, 101 C. C. A. 604; *First National Bank v. Dennis*, 20 N. M. 96, 146 Pac. 948.)

Publisher's Note.

3. See R. C. L. 552.

See Banks and Banking, 7 C. J., sec. 548, p. 751, n. 78, 79; p. 752, n. 82.

A trustee who converts the trust property to his own use or diverts such property from the trust purposes to the use of the trustee becomes unjustly enriched to the amount and value of the trust property, and creates an equitable debt in favor of the beneficiary against the trust estate. (*Hawaiian Pineapple Co. v. Browne,* 69 Mont. 140, 220 Pac. 1114.)

Accordingly, the beneficiary may enforce his claim against the whole of the trust estate. (*Russell v. Bank of Nampa,* 31 Ida. 59, 169 Pac. 180; *Fralick v. Coeur D'Alene Bk. & Tr. Co.,* 36 Ida. 108, at 117, 210 Pac. 586; *Smith v. Fuller,* 86 Ohio St. 57, Ann. Cas. 1913D, 387, 99 N. E. 214, L. R. A. 1916C, 6; *Continental Nat. Bank v. Weems,* 69 Tex. 489, 5 Am. St. 85, 6 S. W. 802; *Hunt v. Townsend* (Tex.), 26 S. W. 310; *Thompson v. Gloucester City Sav. Inst.* (N. J), 8 Atl. 97; *Hutchinson v. National Bank of Commerce,* 145 Ala. 196, 41 So. 143; *State v. Thum,* 6 Ida. 323, 55 Pac. 858; *Peters v. Bain,* 133 U. S. 670, 10 Sup. Ct. Rep. 354, 33 L. ed. 696.)

Trust money held by a bank does not lose its trust character although deposited by an officer of the trustee bank to his own credit. (*Central National Bank v. Connecticut Mut. Life Ins. Co.,* 14 Otto (U. S.), 54, 26 L. ed. 693; *Oklahoma State Bank v. Galion Iron Works, etc.,* 4 Fed. (2d) 337.)

Roy L. Black, for Respondents.

The burden of tracing the fund into, and showing that it is a part of the assets of the insolvent bank, is upon the claimant of the trust fund. The appellant not only failed to trace said fund into the hands of the receiver, but the evidence affirmatively shows that all of the proceeds received by the Standrod bank from the Brice York note went out of the bank through the account of C. W. Berryman and that no part of the proceeds of the Brice York note remained in the Standrod bank assets in any form when the receiver took charge, or afterwards. (*Boone County National Bank v. Latimore,* 67 Fed. 27; *Riley v. Callahan Milling Co.,* 28 Ida. 525, 155 Pac. 665; *Arnold*

*Investment Co. v. Citizens' State Bank*, 98 Kan. 412, 158 Pac. 68, L. R. A. 1916F, 822; *Honer v. Hanover State Bank*, 114 Kan. 123, 216 Pac. 822; *Nelson v. Paxton*, 113 Kan. 394, 214 Pac. 784; *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237, 58 N. W. 383; *Spiroplos v. Scandinavian Bank of Tacoma*, 116 Wash. 491, 16 A. L. R. 181, 199 Pac. 997; *Zimmerli v. Northern Bank and Trust Co.*, 111 Wash. 624, 17 A. L. R. 192, 191 Pac. 788; *State v. Bank of Commerce*, 54 Neb. 725, 75 N. W. 28; *Clinton Min. & Mineral Co. v. Trust Co. of No. America*, 35 S. D. 253, 151 N. W. 998; *Slater v. Oriental Mills*, 18 R. I. 352, 27 Atl. 443; *Lusk Dev. & Impr. Co. v. Glinther*, 32 Wyo. 294, 232 Pac. 518; *Beard v. Independent School Dist.*, 88 Fed. 375, 31 C. C. A. 562; *Empire State Surety Co. v. Carroll County*, 194 Fed. 593, 114 C. C. A. 435.)

TAYLOR, J.—Plaintiff, appellant, United States National Bank of Portland, Oregon, brought this action against D. W. Standrod & Company, Bankers, and E. W. Porter, commissioner of finance in charge of said defendant as an insolvent bank, to secure the allowance of a claim and to impress the amount thereof upon the assets of the bank as held in trust for plaintiff.

During the year 1922, plaintiff made a loan to C. W. Berryman and others. As collateral security for the liability of C. W. Berryman, there was, among other items, pledged and delivered to plaintiff a note of one Brice York and wife, in the sum of $13,369, with a real estate mortgage securing the same, both dated January 1, 1922, payable two years after date to the order of C. W. Berryman at the banking house of D. W. Standrod & Company at Blackfoot. During all the transactions recited, C. W. Berryman was president, and W. F. Berryman, his son, was cashier, of the defendant bank. The plaintiff was defendant's Portland correspondent, to which it made remittances as such, and with which it maintained a credit balance.

In June, 1923, Brice York arranged to refund his mortgage indebtedness by securing through the Federal Land Bank of Spokane, Washington, a new loan of $11,700, secured by mortgage, and giving a second note and mortgage to C. W. Berryman for the unpaid balance of $3,324.50. In closing this transaction, the Spokane bank, by letter of June 25, 1923, to Mr. E. M. Gregg, secretary and treasurer of the Blackfoot local Federal Farm Loan Association, sent a draft on the Old National Bank of Spokane, in the sum of $11,700, drawn in favor of D. W. Standrod & Company, reciting it to be for the purpose of paying and "to be used in payment of mortgage for $13,369, dated January 1, 1922, executed by Brice York, et ux., to C. W. Berryman." The letter further recited:

"The note and mortgage being paid may be cancelled and delivered to the borrower, if you will advise us that you have done so, but proper release of the mortgage must be forwarded to us. . . . .

"No use is to be made of these drafts unless all our requirements can be complied with."

A copy of this letter of instructions was sent to the defendant bank. The letter and draft were delivered to the bank on June 28, 1923. This draft was indorsed by the defendant bank by W. F. Berryman, cashier, and on June 28, 1923, was forwarded by it to plaintiff for credit, and the defendant bank charged plaintiff on that day with $11,700 in its general commercial account between them. The Standrod bank received credit for this amount by plaintiff on June 30, 1923, in its account between them. On June 29, 1923, after the Standrod bank had received and forwarded the $11,700 draft for credit, it, by W. F. Berryman, cashier, wrote to plaintiff as follows:

"June 29th, 1923.

"United States National Bank,

"Portland, Oregon.

"Gentlemen:

"You are holding a note of C. W. Berryman's as collateral for a note signed by Brice York, secured by mortgage.

Mr. York is securing a loan from the Federal Land Bank, amount $10,000.00, C. W. Berryman agreeing to take a second mortgage for the balance. We are wondering if you would be willing to release this security upon payment of $10,000.00 which he is to receive from the Loan Company.

"Very truly yours,

"W. F. BERRYMAN,

"BB.                                        Cashier."

On July 2d, the plaintiff acknowledged this letter with this statement:

"We are agreeable to releasing the note upon payment of $10,000 to us, and we are sending to you under separate cover the note for this purpose."

The Standrod bank had not disclosed and did not disclose to plaintiff that it had already received the $11,700 draft, or at any time remit any sum to plaintiff to apply upon or pay this $10,000.

In addition to the $11,700, Brice York gave a new note and second mortgage for $3,324.50, the note payable to D. W. Standrod & Company, and the mortgage payable to C. W. Berryman, mortgagee. This note and mortgage did not, for some unexplained reason, come into the hands of the commissioner. The bank became insolvent, and was taken in charge by the defendant commissioner on November 29, 1923. Brice York paid this new note to C. W. Berryman December 8, 1923, some eight days after the bank closed, and he satisfied the mortgage.

W. F. Berryman, the son, testified that Gregg came in the bank and delivered the Spokane draft to his father, C. W. Berryman, who, without indorsing the draft, which was on its face payable to the bank, handed the draft to Berryman, the son, cashier; that he, the son, made a certificate of deposit to his father of the $11,700, and placed it in his father's account; that before the bank closed, this account of the father's, including some $10,800 of later deposits, had, with the exception of $82.11, been checked out by the father.

The evidence also shows that the defendant bank continued from time to time to make other remittances to the plaintiff for its credit account. Defendant's books show that there was remitted to the plaintiff from then until the close of defendant bank, from time to time, a total of $156,897.08; that at one time in August, 1923, the deposit or credit of the defendant bank with the plaintiff had been reduced to $752.38; that when the bank failed, its credit with plaintiff was $3,700.88. This latter item of credit was kept and retained by plaintiff, and applied upon other items owed by the failed bank to plaintiff. The plaintiff's own books show that upon July 30th, the defendant bank had overdrawn $111.87, thus showing that upon that date, no part of the $11,700 remained.

The court made findings and conclusions in effect that $10,000 of this money was received in trust and wrongfully appropriated by the defendant bank. It, however, further found that this money was deposited to the credit of C. W. Berryman and all checked out and exhausted before the bank failed, and that no part of it came into the hands of the receiver, and further that the new note and second mortgage for $3,324.50, given by York, did not at any time come into the hands of the receiver.

The commissioner having disallowed plaintiff's claim *in toto,* the court found in favor of the plaintiff in the sum of $10,000, but allowed this as a claim "with a classification under subdivision 4, section 13, chapter 42, 1921 Session Laws." Plaintiff seeks to impress the lien of a trust upon all the assets of the defendant bank for the amount of the original note and mortgage. Respondents contend that this was not a bank transaction, but one between plaintiff and C. W. Berryman, who owed the plaintiff on his notes in his individual capacity; and that the Standrod bank was not dealing with this remittance as a banking matter so as to be charged with a trust. Sufficient to say, the lower court, upon ample evidence, found that the money was received in trust. We will treat the matter as established, that the bank was dealing in a fiduciary and trust relation; that

it violated its trust; and that the $10,000 was a trust fund.

The right of plaintiff turns upon, first, the question whether, in such state of facts, it may have a lien upon all of the assets of the bank; secondly, if not upon all of the assets, may it have a lien upon any assets in the hands of the commissioner, and if so, has it fulfilled the requirements in tracing its trust fund into, or shown that such fund augmented the assets which came into, the hands of the commissioner?

[1] The court found that the $11,700 draft was indorsed by the Standrod bank and delivered to C. W. Berryman, and by him deposited in his own account, and all thereafter checked out and paid out by the bank, and that none of it came into the hands of the commissioner. The bank could not, by a mere subterfuge of wrongfully indorsing the draft and giving it to C. W. Berryman and immediately reaccepting it for deposit, or by mere bookkeeping entries, make a gift of the fund to its president. The money was trust money, and even where it again received the draft with full knowledge of the depositor who was its president, it was charged with the trust. It was not the money of the bank so to dispose of it. (*Davis v. Smith,* 27 Minn. 390, 7 N. W. 731, 29 Minn. 201, 12 N. W. 531.)

[2] Plaintiff contends that this fund was traced by its remittance into the funds of the Standrod bank in its credit account in Portland. If the finding of the court that "no part or portion of the proceeds received as payment on said Brice York note and mortgage (original) was a part of the assets that came into the hands of the receiver," is supported in either event, then the judgment must be sustained. The evidence is ample to support this finding as to the $3,324.50 note and second mortgage, even if it be assumed that any trust relation attached to that item. Accepting plaintiff's contention that the $11,700 has been traced to its deposit as a credit in the Portland bank, what if any tracing has the plaintiff established from that period to the closing of the bank, showing that any part of the fund went

into the assets of the bank in any form, by specific identification or otherwise, which were taken over by the commissioner? The testimony is meager on this point, a mere statement of the vice-president of plaintiff bank and the cashier and custodian of defendant bank that funds sent to Portland were paid out by plaintiff bank on orders and drafts of the defendant, no penny of which is shown to have again reached the assets which were ultimately turned over to the commissioner.

When the bank failed it had in cash $800 to $900, augmented shortly thereafter by other funds received by the commissioner from various sources in the amount of $9,642.38. None of this money was traced to its source as proceeds of the draft of $11,700. The fact that the funds reached Portland for deposit, and were paid out on orders of the defendant bank, does not show that any portion of them was thereafter, or any property acquired therewith was, received by and came into the hands of the bank or the commissioner. (*Arnold Investment Co. v. Citizens' State Bank*, 98 Kan. 412, 158 Pac. 68, L. R. A. 1916F, 822.) There is no showing that any of the funds deposited in Portland were ever sent back to, or again reached, the bank at Blackfoot.

[3] This court is committed to the rule that, in order for one claiming a trust fund to impress a trust on the property of a defunct bank where the rights of others are involved, he must show by tracing that the fund, or some property into which it may be traced, came into the hands of the bank, and remained in and a part of the assets which came into the hands of the receiver. In *Cox v. St. Anthony Bank & Trust Co.*, 41 Ida. 776, 242 Pac. 785, we quoted with approval from *Travellers' Insurance Co. v. Caldwell*, 59 Kan. 156, 52 Pac. 440, the following: " . . . . If the fund has been so commingled with the general assets as to be incapable of identification or tracing, the estate which came to the assignee must have been augmented or bettered in an appreciable and tangible way, in order to charge it with the trust. The mere saving of the estate, by the discharge of general

indebtedness otherwise payable out of it, or the payment of the current expenses of the business, is not an augmentation or betterment of the estate, within the meaning of the rule. If the estate has not been increased by specific additions ·to it, or if what previously existed has not been improved or rendered more valuable, it has not been impressed with the trust claimed.''

See, also, *Bellevue State Bank v. Coffin*, 22 Ida. 210, 125 Pac. 816; *Martin v. Smith*, 33 Ida. 692, 197 Pac. 823.

This rule is supported by the great weight of authority. (*Macy v. Roedenbeck*, 227 Fed. 346, 142 C. C. A. 42, L. R. A. 1916C, 12; note, L. R. A. 1916C, 21.)

Judgment affirmed. Costs to respondents.

William A. Lee, C. J., and Wm. E. Lee and Givens, JJ., concur.

Budge, J., sat at the hearing, but took no part in the decision.