[Nos. 3274 and 3275. June 19, 1929.]

BOARD OF COM'RS., SAN MIGUEL COUNTY v. PEOPLE'S BANK & TRUST CO. et al. (MELAVEN, Intervener).

SAME v. LAS VEGAS BANK et al. (DELGADO, Intervener).

[279 Pac. 60.]

Chas. W. G. Ward, of East Las Vegas, for appellants.

Tom W. Neal, of Las Vegas, M. E. Noble, of East Las Vegas, for appellee and cross-appellant.

### OPINION OF THE COURT

WATSON, J.  Of the two appeals here consolidated for submission and decision, that of Board of County Commissioners of San Miguel County v. People's Bank & Trust Co. et al. (No. 3274), is selected for discussion; it being understood that the decision of that appeal will be controlling of the other.

The amended complaint sets up that on August 20, 1927, the said bank closed its doors and went into possession of the state bank examiner; that on said date there was on deposit in the name of the county treasurer of San Miguel county something over $23,000 of public moneys, of which about $18,000 was secured by depository bond, and some $5,000 was not.  These facts are not in dispute.  It was further alleged that the unsecured deposit was in an open checking account, was illegally made, to the knowledge both of the county treasurer and of the bank; that the title thereto did not pass to the bank; that all of the money so deposited had been so mingled with the bank's assets as to be impossible of identification or recovery in kind; that defendant Saunders, the state bank examiner, contemplated making application for the appointment of a receiver; that, so long as the title to such assets remained in the bank, a lien existed thereon for the satisfaction of the debts owing to the state and its governmental agencies.  The prayer was for an injunction restraining the bank from disposing of title to its assets until such lien had been declared, or,

if such receiver should be appointed, an adjudication that he take title subject to such lien.

The defendants named, the bank and the state bank examiner, suffered default; but John W. Melaven, receiver, appointed after commencement of the suit, was permitted to intervene.

It was found by the trial court that the deposits in question were "of the public moneys of the state of New Mexico and of the county of San Miguel and the different governmental subdivisions thereof"; that the bank knew the nature of said deposit; that the action was commenced prior to the appointment of the receiver; that the amount of the deposit in excess of the security was illegal and unlawful and known so to be by the county treasurer and by the bank; that the cash and sight exchange of the bank was at all times, up to the closing thereof, greater than the amount of said unsecured deposit; and that "the assets coming into the hands of the receiver were swelled by the said sum so illegally and unlawfully deposited in said bank by said treasurer."

Upon these findings the court concluded, as matter of law, that the plaintiff was entitled to a lien or preference for the unsecured deposit, less a small sum for which the county treasurer had issued checks, and which the payees had negligently failed to present, but that the plaintiff was not entitled to a lien or preference for the secured deposit.

Upon these conclusions, judgment was rendered requiring preferential payment to the plaintiff of the sum of $4,952.74. The receiver has appealed and the board of county commissioners has taken a so-called cross-appeal. The latter will be considered first, since, if cross-appellant's contention is correct, it will be unnecessary to proceed further.

Cross-appellant contends that it is entitled to preferential payment of the whole of its claim. It reasons that at common law the king was a preferred creditor; that the common law has been in force in New Mexico since 1876 (Code 1915, § 1354); that sovereignty, which

once resided in the king, now resides in the people constitutionally organized as a state; that such of the king's prerogative as was not personal merely now appertains to the people in their capacity as the state; and, finally, that the county of San Miguel, as a political subdivision of the state, enjoys and may claim the same prerogative.

The contention that the state is entitled to a preference as among creditors, by reason of the adoption of the common law, has been twice made in this court. State v. First State Bank, 22 N. M. 661, 167 P. 3, L. R. A. 1918A, 394; State v. People's Bank & Trust Co., 23 N. M. 282, 168 P. 526. In neither case was it necessary to decide the question. In both it was determined that, if the state enjoyed such right while the title remained in the debtor, it lost it when the title passed to a receiver. Those decisions doubtless explain the commencement of suit in the present case against the bank and the examiner prior to the appointment of a receiver, as an attempt to preserve the preference. Whether such an attempt could succeed, we need not consider, since another question precedes it.

We may assume, for the purposes of this decision, that the state's preference over other creditors exists in New Mexico as it did at common law. We may even assume that the state may preserve its preference in the assets of an insolvent bank by commencing suit to enforce it before title has passed to a receiver. In the present case, however, it is not the state that is claiming such preference. The only party plaintiff is the board of county commissioners; that is to say, the county. We may further assume that in a suit by the county treasurer, brought in his official capacity, his special property in the deposits, with proof as to what part thereof was the general property of the state, might have been successful. But this suit is brought by the county itself, and must be upon the theory of general ownership. As we understand our fiscal system, the county has no ownership or property right, either general or special, in the funds of the state. There has been no effort in the proof or findings to segregate that which is the county's from that which is the state's. It may be doubted, therefore, whether any recovery could

have been justified. We disregard that question, however, since it was not decided below, nor urged here. Cross-appellant relies upon the proposition that the county, in respect to its own funds, as a subdivision of the state, enjoys the same priority that the king had at common law. That proposition we shall consider.

Our attention is called to an annotation, 51 A. L. R. 1336, entitled, "Right in absence of statute to preference in respect of deposit of public funds in insolvent bank." After considering the state's prerogative of preference at common law, the annotator passes to the question of its "extension to political subdivisions." See page 1339 of 51 A. L. R. He there states it as "the generally accepted view that the prerogative right is the right of the state alone, and is not available to its political subdivisions." Examination of the cases there cited shows the following to be directly in point: Bignell et al. v. Cummins, 69 Mont. 294, 222 P. 797, 36 A. L. R. 634; County of Glynn v. Brunswick Terminal Co. et al., 101 Ga. 244, 28 S. E. 604, approved in Knight et al. v. State of Georgia et al., 137 Ga. 537, 73 S. E. 825; Cannon County v. McConnell, 152 Tenn. 555, 280 S. W. 24; Calhoun County Court v. Mathews, 99 W. Va. 483, 129 S. E. 399, 52 A. L. R. 751; Aetna Casualty & Surety Co. v. Bramwell (D. C.) 12 F. (2d) 307 (applying Oregon law). In re Northern Bank of New York, 85 Misc. Rep. 594, 148 N. Y. S. 70, affirmed in 212 N. Y. 608, 106 N. E. 749, though perhaps not directly in point, reaches the same result as respects the claim of the city of New York.

Leach v. United States Bank, 205 Iowa, 987, 213 N. W. 528, is cited by the author of this annotation as apparently constituting an exception to the rule. Syllabus No. 1 perhaps is a declaration to that effect, but the opinion, as we read it, is merely to the effect that the county's claim of a preference right can only be worked out "on the theory that it is a part of the state." The court has held, apparently, that, if the state has no such right, the county cannot have; but has not held that the county has such right because the state has. Nor have we found any such holding by the Iowa Supreme Court in any of the decisions which have been brought to our attention. Cross-

appellant does not cite this authority. We have carefully examined numerous other authorities which it cites, and find but one of them in point, namely City and County of Denver v. Stenger, 295 F. 809, decided by the Circuit Court of Appeals (Eighth Circuit), which disposed of the question in this summary manner:

"Under the common law, the sovereign had a right to a certain preference in payment. [Citations.] The common law is, by statutory authority [citations], in force in Colorado. Appellant is an agency of the state exercising the delegated sovereignty thereof in local matters. It is entitled to whatever priority the state might demand."

This is mere assertion of what was contended and overruled in all of the foregoing cases. It is to be noted that the four grounds upon which, as stated in the opinion, counsel challenged the priority claimed by the city and county of Denver, do not include the point that the right was limited to the sovereign itself.

The annotation above cited is limited to claims of priority in the assets of an insolvent bank. The same considerations and principles are involved where the assets in which the preference is claimed are those of insolvents generally. An annotation upon this question is found in 36 A. L. R. 640, where most of the foregoing cases and some others are cited. This is supplemented by an annotation in 52 A. L. R. 755. The author of the first-mentioned annotation expresses no view of his own further than to say that "the cases are not entirely agreed upon the question." The author of the last-mentioned annotation says this:

"The recent cases dealing with the specific question under annotation, in those jurisdictions which recognize the prerogative right of the state to a preference over general depositors and creditors of insolvents, support the majority rule, which is that prerogative right, being an attribute of sovereignty, is possessed by the state alone, and not by a county or other political subdivision of the state."

We find, therefore, a decided weight of authority against cross-appellant's contention, and we find ourselves in accord with it. However we may be bound in New Mexico by the common-law rule applying to the state itself, we surely are not bound to extend that rule, thus

giving it an application unknown to the common law, and involving new consequences in public policy.

So the cross-appeal is without merit, and we pass to the appeal.

██ ██ Appellant contends that the court erred in awarding preference as to the unsecured deposit. Counsel agree that it·was an unlawful deposit and constitutes .a trust. We accept the agreement as the basis of decision. Appellant admits that, if the trust were capable of identification in the hands of the receiver in its original, or in a converted, form, it would be recoverable; but he says that the judgment, dispensing with such identification, is erroneous.

Counsel for appellee and the trial court clearly proceeded on the theory that proof of ·the trust was sufficient to entitle the cestui to preferential payment without any proof that the subject-matter of the trust, in its original or converted form, was found in the hands of the receiver. The amended complaint admits that the subject-matter "was so mixed and mingled with the assets of said bank as to be impossible of identification or recovery in kind." The court found:

"That said deposit * * * without any security having been required or taken therefor * * * was illegal. * * * That the title to said money did not pass to said bank and the sums constitute a trust fund in the hands of such receiver. * * * That the cash and sight exchange of the People's Bank & Trust Company was in excess of the sum of $5,277.29 each day from the date of said deposit until said bank closed its doors. That the assets coming into the hands of said receiver were swelled by the said sum so illegally and unlawfully ·deposited in said bank by said treasurer."

The evidence as to the subject-matter of the trust was simply the bank's ledger sheet covering the account from August 7 to August 19. It starts with a credit balance of $7,466.33, discloses intermediate deposits and withdrawals, and ends with a credit balance of $5,277.29. The deposit slips were not introduced, and there is nothing to .show the nature of the deposits, whether money, checks, drafts, or other credits. The original nature of the trust not being shown, the court was, of course, without means

of tracing it into specific assets which came into the hands of the receiver.

If the subject-matter of a trust cannot be identified, in its original or in a converted form, the only cause of action available against the trustee is one for the conversion. Such is the present cause of action. If the judgment is to be sustained, it must be upon the principle that such a judgment creditor is entitled to priority over general creditors. But our insolvent laws give no such priority. The general principles of equity have no such operation, and, so far as we are aware, the decisions of no other jurisdiction go so far.

The true distinction between a cestui que trust and a creditor is based upon the fact that the title to the cestui's property has not passed. Therefore he may follow and recover it in the hands of any one who is not a good-faith purchaser for value. The rights of the parties in such cases as this must be worked out upon that fundamental distinction.

This is well stated in the annotation to Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, as reported in 15 L. R. A. (N. S.) 1100, as follows:

"In entering upon a discussion involving the right of a cestui que trust to reclaim trust funds, the fundamental principle may properly be recalled that the beneficiary of a trust fund is not entitled, solely because of the character of his claim, to the payment of the same in full, to the exclusion of other creditors, out of the assets of the insolvent trustee's estate; but that the right to reclaim a trust fund is founded on the right of property, and not on the ground of compensation for its loss. Accordingly he must be able to point out the particular property into which the fund has been converted; but, when he is unable to do this, the trust fails, and his claim becomes one for compensation only, for the loss of the fund, and stands on the same basis as the claims of general creditors."

See, also, the annotation, "Following Trust Funds," L. R. A. 1916C, 21, where, at page 39, it is said:

"It is an ancient doctrine established by a long line of authorities, and one, notwithstanding it was for a time not accepted by the courts of some states, where the contrary decisions have since been discredited, which is no longer questioned, that the right of a beneficial owner to follow money which was held in trust

either as an original trust fund or as the proceeds of trust property after a misapplication or conversion of the trustee in breach of the trust, and again to subject it or the property acquired by means of it to the trust, ends—although it ends only—when the money can be traced no longer and cannot be identified or recognized in any existing fund or property. A court of equity, as Mr. Justice Allen of the Massachusetts supreme judicial court put it, will go as far as it can to trace and follow trust money, but when in fact the money cannot be traced, the equitable right of the cestui que trust to it fails. Little v. Chadwick (1890) 151 Mass. 109, 7 L. R. A. 570, 23 N. E. 1005."

The annotation last referred to contains the fullest discussion and most complete collection of authorities on the subject which has come to our attention. We are thus spared the necessity of citation to this proposition except to note a few decisions not there included. American Can Co. v. Williams (C. C. A.) 178 F. 420; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Titlow v. McCormick (C. C. A.) 236 F. 209; U. S. National Bank v. City of Centralia (C. C. A.) 240 F. 93; Farmers' National Bank v. Pribble (C. C. A.) 15 F. (2d) 175; Dudley v. Richards (C. C. A.) 18 F. (2d) 876; Summers v. Farmers' Bank (Mo. App.) 282 S. W. 757; Independent School District v. Smith, 50 S. D. 153, 208 N. W. 775; U. S. National Bank v. D. W. Standrod & Co., 42 Idaho, 711, 248 P. 16; Clinton Mining & Mineral Co. v. Trust Co., 35 S. D. 253, 151 N. W. 998.

The development of this principle is well set forth in the following decisions: Frelinghuysen v. Nugent (C. C.) 36 F. 229; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; Spokane County v. Clark (C. C.) 61 F. 538; Beard v. Independent District of Pella City (C. C. A.) 88 F. 375; American Can Co. v. Williams, supra; Drovers' & Mechanics' National Bank v. Roller, 85 Md. 495, 37 A. 30, 36 L. R. A. 767, 60 Am. St. Rep. 344; Ferchen v. Arndt, 26 Or. 121, 37 P. 161, 29 L. R. A. 664, 46 Am. St. Rep. 603; Shields v. Thomas, 71 Miss. 260, 14 So. 84, 42 Am. St. Rep. 458.

On the theory that, if the subject-matter of a trust in its original or converted form were once traced to a mass, the whole could be impressed with a trust to insure recovery by the cestui of what was his, the early decisions of some courts went so far as to hold that, if it appeared

that the subject-matter of the trust had been mingled with, and had augmented, the general assets, the whole estate should be impressed with the trust to enable the cestui to recover what was his before general creditors should be allowed to participate. But those decisions have been generally discredited, and for the most part, at least, overruled. Philadelphia National Bank v. Dowd (C. C.) 38 F. 172, 2 L. R. A. 480; Spokane County v. First National Bank (C. C. A.) 68 F. 979; Macy v. Roedenbeck (C. C. A.) 277 F. 346, L. R. A. 1916C, 12; Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383; Slater v. Oriental Mills, 18 R. I. 352, 27 A. 443; Bank Commissioners v. Trust Co., 70 N. H. 536, 49 A. 113; Drovers' & Mechanics' National Bank v. Roller, supra; Ferchen v. Arndt, supra; Shields v. Thomas, supra; State v. Bank of Commerce, 54 Neb. 725, 75 N. W. 28.

These discredited decisions, while perhaps doing lip service to the fundamental principle stated, are in fact disloyal to it. Identification of the property, or its proceeds, is essential to a recovery of it. To waive identification is merely to say that one who is a creditor through breach of trust is to be preferred to other creditors. Impressing a trust upon a uniform mass, such as money, into which the subject-matter of the trust has been traced, is logical and equitable. But general assets are not uniform. Some are good, and some are worthless. If, in fact, the subject-matter of the trust has been converted into a worthless asset, impressing a trust upon the whole does not effect a recovery of the cestui's own property. It gives him a preference. Moreover, unless there can be an identification of the trust, or its proceeds, how can it be said that it has served to augment the general assets?

It seems, then, that reason and authority are clearly opposed to the theory upon which appellee proceeded and the trial court rendered judgment. Appellee does not seriously contend otherwise. Its entire reliance in the brief is upon the contention that in State v. McKinley County Bank (In re Robb) 32 N. M. 147, 252 P. 980, this court departed from the principle established by the practically uniform current of authority. In oral argument attention was also called to our later decisions in Sinclair

Refining Co. v. Tierney, 33 N. M. 498, 270 P. 792, and Walker & Gilbert v. First State Bank (Thomason v. First State Bank) 33 N. M. 565, 273 P. 764, which cases are relied on as controlling. It remains, therefore, to review the course of decision in this jurisdiction and to ascertain the state of the local law.

By Daughtry v. Bank, 18 N. M. 119, 134 P. 220, we seemed to be committed to the fundamental principle above stated. A complaint which failed to set forth "what became of" the trust property was held demurrable for failure to allege "the essential fact necessary to enforce the trust." We quoted with approval from Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, the annotation to which, in 15 L. R. A. (N. S.) 1100, has been referred to supra. That case well illustrates the necessity of tracing the trust property into the hands of the receiver, and of identifying it. The Daughtry Case was followed in Board of Commissioners v. Clapp, 24 N. M. 522, 174 P. 998.

In State v. McKinley County Bank (In re Robb) supra, we again referred to the Daughtry Case, and expressed no disapproval of any part of it. But it is here contended that the deposit made by Robb, on account of which we impressed a trust upon the cash in the hands of the receiver, was not, and could not have been, traced into such cash, because it was a mere passing of credit from Mrs. Hearst to him. So, it is urged, we proceeded upon the theory that it was unnecessary to trace the subject-matter of the trust into the hands of the receiver. We had no intention of so holding, and we were in fact at some pains to accomplish such tracing. As the theory upon which the case was decided seems to have been misunderstood, it may be well to take this occasion to clarify it.

Robb's Case was peculiar, perhaps unique. We so indicated at the outset. We said:

"As we desire the exact facts upon which this decision is based to appear in the opinion, we insert here the findings of the trial court, the correctness of which is not in controversy."

The peculiarity was this: After the bank was insolvent, and known by its officers and directors to be in-

solvent, and after it had been agreed to close it, and during the day on which withdrawals were being permitted, but deposits were being kept separate for identification and return, the isolated transaction in question occurred —perhaps inadvertently. Considered as a whole, it added nothing to the cash resources, or, indeed, to the general assets of the bank. It was merely a matter of bookkeeping. Reduced to its elements, however, it consisted of a withdrawal of $1,160 by Mrs. Hearst and a deposit of that sum by Mr. Robb. According to the policy adopted by the bank for that particular day and pursued by it except in the one case, it was its duty to refuse the transaction as the parties proposed it, as a mere exchange of credits or bookkeeping matter. In keeping with its policy, it could only have' separated the transaction into its elements. Thus there would have been found $1,160 in cash in a separate envelope to be returned to Robb on the theory that it was a special deposit. To have yielded to the contention there made would have been to discriminate against Robb alone of all persons making deposits on that day, upon a highly technical distinction. So, in order to do equity and to treat equally those whose situations were substantially the same, we invoked the maxim that equity regards as done what should have been done. We think that the peculiar facts in that case justified the result, whatever may be the general rule as to bookkeeping transactions.

In Sinclair Refining Co. v. Tierney, we held, in the absence of any such facts as appear in the Robb Case, that equity would not regard it as material whether the subject-matter of a trust was actual money or a check drawn upon the trustee bank. We cited the Robb Case and a number of decisions from other jurisdictions. There is a conflict of authority on the point. Some courts seem to have made augmentation of assets, or a specific asset, the criterion, rather than tracing or identification, and to have held that, where the subject-matter of the trust is a check upon the trustee bank, there has been a failure to trace the trust into the bank's cash resources. As holding that view, we may cite Beard v. Independent District of Pella City, and Empire State Surety Co. v. Carrol County, supra, and Mechanics' & Metals Nat. Bank v.

Buchanan (C. C. A.) 12 F. (2d) 891. If augmentation were to be deemed the correct criterion, the deposit of a check upon the bank in which the deposit is made would constitute augmentation or not according as the court viewed the transaction. If the drawing of the check and the depositing it are considered as a single transaction, it results in no augmentation but, if separated into its elements, the deposit of the check restores to the cash resources of the bank what has been, by the drawing of the check, taken therefrom, and thus augments them. In the ordinary transaction of this kind, the final result is accomplished by a mere bookkeeping entry, a change in the person to whom the bank is indebted, without any change in the condition of its assets; but, if the payee of the check, instead of merely depositing it, places it in trust, there can be no such switching of credit because the payee did not consent to become a creditor. The drawing of the check, as a demand of a creditor upon the cash resources of the bank, and placing the check, as such a demand, in trust, could not be combined as one transaction without destroying an equity and misinterpreting the true nature of the transaction. So much, at least, may be said in favor of the holding in Sinclair Refining Co. v. Tierney, and such is its theory. Whether that ruling is supported by the better reasoning and authority we need not now consider. We do not deem it controlling in the case at bar.

It does not appear in the present case that the trust was made up from checks upon the insolvent bank. It no doubt consisted, in part, of such items; probably also of some cash items; perhaps also of checks upon other Las Vegas banks, and of foreign checks and drafts. As held in the Daughtry Case, it is necessary to allege, and consequently to prove, "what became of" the cash or credits loosely proven and referred to as "deposits." If a part of the trust was in cash, and was intermingled with the bank's cash, and was not thereafter paid out, it could be recovered by impressing a trust or lien on the cash which came to the receiver's hands. Checks on other Las Vegas banks may or may not have reached the bank's cash, depending upon whether they were collected in cash

or used in clearing. Foreign checks and drafts would doubtless find their way into the bank's balance with some correspondent or depositary. If traced there and shown to have remained there, and to have become available, to the receiver, that specific fund could be impressed with a trust. But merely to trace an indefinite "deposit" to the teller's window does not prove that the amount of it in the original or converted form has reached the receiver. It does not even support a finding that it has served to augment the general assets in the receiver's hands, nor warrant the impressment of a trust either upon the general assets or upon the cash resources.

The trial court found that the bank's cash and sight exchange at all times exceeded the trust amount. By "sight exchange" was doubtless meant balances with correspondents. This reflects the view that a trust once established may be enforced against cash and sight exchange, if not against general assets. But the rule, as we have seen, requires that the trust property be traced to the specific fund it is sought to hold. The fallacy of this view is exposed by the Circuit Court of Appeals for the Eighth Circuit in State Bank of Winfield v. Alva Security Bank, 232 F. 848.

A case quite similar in its facts to the present case, and which has been frequently cited, is Cherry v. Territory, 17 Okl. 221, 89 P. 192, 8 L. R. A. (N. S.) 1254.

We come now to the last of the cases relied upon by appellee, Walker & Gilbert v. First State Bank (Thomason v. First State Bank), supra. This latest pronouncement of this court upon the subject seems on its face opposed to the fundamental principle above stated. Yet we therein cited the earlier decisions with approval, and relied upon presumptions pertaining to the theory of following and recovering trust property and not applicable to the preference theory. So this case must also be explained.

The trial court had found that the Walker & Gilbert trust was not traceable into the hands of the receiver. That finding warranted the refusal to impress a trust upon any of the assets. On re-examining the record, it

seems that the finding was supported by the evidence; the subject-matter of the trust having been a foreign check, traced to the insolvent bank and no farther.

But confusion was introduced into this case by the filing of a stipulation which received the approval of the trial court. The stipulation recited that "in the order disallowing the claim for preference of Walker & Gilbert the language might be misconstrued as to the court's findings of fact as therein made," and agreed "that the *money* of the claimant, Walker & Gilbert, was paid to said bank prior to the closing of that institution. * * *" By the stipulation we were led to believe that Walker & Gilbert's *money* had been traced to the bank's vault, and that some $600 of it remained there at the closing, and passed into the hands of the receiver, and that the trial court had failed to recognize the presumption that moneys paid out of the cash resources of the bank after the commingling were moneys of the bank rather than of the cestui que trust. Moreover, counsel for appellee did not seriously resist appellant's claim upon the cash on hand when the bank closed. Whether this decision was itself right or wrong, it was not intended to depart therein from the established principles.

In the case at bar, some effort was made in argument to establish that the subject-matter of the trust was actual money. Reliance was placed upon loose expressions in the evidence and the findings, such as "moneys," "funds," "sums" and "moneys so deposited." We are satisfied, however, that no such theory was presented to, or passed upon, by the trial court.

We conclude, therefore, that the judgment under review in appeal No. 3274 must be reversed and the cause remanded, with direction to disallow any preference to the board of county commissioners, and to dispose of the case consistently with the views herein expressed. Upon our understanding that the points here settled are decisive of appeal No. 3275, the same result will follow in that case. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

CATRON and SIMMS, JJ., did not participate.